THE STATE v. GENE RECTOR, Appellant.—40 S. W. (2d) 639.

Division Two, July 3, 1931.

670

*C. W. Evans* and *D. C. Chastain* for appellant.

*Stratton Shartel,* Attorney-General, and *Don Purteet,* Assistant Attorney-General, for respondent.

672

ELLISON, J.—The defendant was convicted by a jury in the Circuit Court of Bates County of carrying a revolver in an automobile in which intoxicating liquor was being transported, in violation of Section 17, Laws 1923, pages 236, 241, now Section 4517, Revised Statutes 1929, and his punishment assessed at imprisonment in the penitentiary for a term of three years. Following the overruling of his motion for a new trial, due allocution, judgment and sentence he brings the case to this court by appeal.

The State's evidence showed that about dark on the evening of February 11, 1928, the appellant was driving a Ford roadster, in which another negro, Charles Harper, a witness for the State, was riding, along Highway No. 52 at a point near Butler in Bates County. The automobile collided with a loaded coal wagon and tipped over. Both occupants fled, but the witness Harper, who was painfully injured, went to a nearby house to telephone a relative for help, and was presently brought back to the scene of the accident. The appellant disappeared, and it was only through the testimony of Harper and the finding of some tickets near the wrecked automobile with the appellant's name on them that he was connected with the offense. His defense was an alibi. A five-gallon jug of whiskey, some smaller quantities, some bottles, some coats, a cap and the revolver were found lying in the road under the overturned car. The revolver was just under the seat. The witness Harper testified he had no revolver, and that he had never seen the one found and offered in evidence until after the accident.

I. The first two assignments of error are directed to the proposition that the amended information on which the prosecution was based was fatally defective and charged no offense known to the laws of this State because it failed to aver: (1) that the defendant was either in charge of the automobile or a passenger thereon; (2) and that the revolver was a weapon which could or might be used to inflict bodily injury or death. These points were urged to the trial court in a motion to quash the information, but the motion was overruled. The learned Attorney-General joins issues on these assignments, but confesses error on the further ground that the information failed to charge the liquor was being transported in violation of any provision of the laws of this State.

The amended information was as follows:

"W. W. Sunderwirth, Prosecuting Attorney within and for Bates County, Missouri, upon his oath of office and upon the affidavit of Howell Heck, informs the court that on or about the 11th day of February, 1928, in the County of Bates and State of Missouri, one Gene Rector did then and there unlawfully, wilfully and feloniously carry a revolver in an automobile in which intoxicating liquor was being transported; contrary to the statutes in such case made and provided and against the peace and dignity of the State of Missouri."

The statute, Section 4517, Revised Statutes 1929, reads as follows:

"Any person, while in charge of, or a passenger thereon, who shall carry on his person, or in, on, or about, any wagon, buggy, automobile, boat, aeroplane, or other conveyance or vehicle whatsoever, in, or upon which any intoxicating liquor, including wine or beer, is carried, conveyed or transported in violation of any provision of the laws of this state, any revolver, gun or other firearm, or explosive, any bowie knife, or other knife having a blade of more than two and one-half inches in length, any slingshot, brass knucks, billy, club or other dangerous weapon, article or thing, which could, or might, be used in inflicting bodily injury, or death upon another, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the state penitentiary for a term of not less than two years. *Provided*, that this section shall not apply to any person or persons transporting intoxicating liquor for personal use and not for sale in violation of law. *Provided*, that this section shall not apply to any person or passenger who did not know that such vehicle or conveyance was being used for unlawful purposes."

The information is, to say the least, very informal. It will be seen at once that it fails to follow the statute in the particulars mentioned. The crime charged, or attempted to be charged, is unknown to the common law. It is created wholly by the statute and to the statute we must look for the constituent elements thereof.

674

Section 22, Article II, of the Constitution provides that "in criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation." This has been held to require that "the information shall specifically bring the defendants within *all* the material words of the statute, for it is the inflexible rule in criminal pleading that, in all indictments or informations for felonies, nothing can be left to intendment or implication." [State v. Barnes, 281 Mo. 514, 220 S. W. 848.] See also such recent cases as State v. Small, 313 Mo. 66, 280 S. W. 1033, and State v. Cox, 318 Mo. 657, 300 S. W. 756.

Undoubtedly the requirement that the accused be in charge of or a passenger in or upon the automobile or other vehicle or conveyance is a constituent element of the crime. The State does not  dispute this but says a person traveling in a conveyance is bound to be either in charge thereof or a passenger thereon; and hence an averment that the accused "carried a revolver in an automobile in which intoxicating liquor was being transported" as in the information under consideration, being substantially a charge that he was riding therein, is not fatally defective, but at most only imperfect. And it is contended that since the State's *evidence* showed the appellant was driving the automobile and was in charge thereof, and his defense was an alibi—that is to say, he made no point about his status or connection with the transportation, but simply denied he was there at all—the imperfection did not tend to prejudice his substantial rights upon the merits, and under Section 3563, Revised Statutes 1929, was insufficient to invalidate the information or affect the judgment.

On this point we are cited to Section 655, Revised Statutes 1929, which provides that in the construction of all statutes of this State "words and phrases shall be taken in their plain or ordinary and usual sense;" and to the first definition of the word passenger in Webster's New International Dictionary, which is "a passer through or passer-by; wayfarer; traveler." But this is not the plain, ordinary and usual meaning of the word. On the contrary Webster's Dictionary says it is "Now Rare, exc. in *foot passenger;*" and Funk & Wagnall's New Standard Dictionary says it is "Archaic." The ordinary meaning, as given by the former, is "a traveller by some established conveyance, as a coach, steamboat, railroad train, etc;" and by the latter, "a person who travels in a public conveyance, as a railway car or steamship; one carried for fare by a common carrier."

Now it is obviously not the intention of the statute to limit the application of the word passenger to persons transported for hire by a common carrier, because the language of the section is very comprehensive and the word is used in connection with such conveyance as wagon, buggy, automobile, boat, aeroplane "or other con-

veyance or vehicle whatsoever," many of which might be and more often are employed in private use than for public carriage; and the whole internal and external context forbids that construction.

On the other hand there is good reason for saying the word has no such broad meaning as the learned Attorney-General gives it. In the first place, as stated, it is rarely used in that sense; and again, if it signifies a mere traveler or passer-by, a person "going somewhere," it would include everyone riding in the conveyance, whereas the section distinguishes between persons *in charge* and passengers, by specifying both, and thereby apparently recognizes and conforms to the doctrine in the law of carrier and passenger that one employed in the operation of a vehicle transporting passengers is not himself a passenger. [10 C. J. 633, sec. 1064; 4 R. C. L. 1010, sec. 476.] This indicates attention should be paid to the usual *legal* signification of the word (See 4 R. C. L. sec. 470, p. 1002; 10 C. J. sec. 1037, p. 610, and word "passenger" in Words & Phrases) which would make it refer to one traveling in a conveyance by virtue of some contract, understanding or arrangement for his carriage, express or implied.

On this theory, which is also more in accord with the ordinary meaning of the word, one transported without the knowledge and consent of the carrier or without his own consent would be excluded from the operation of the section, such as a stowaway or a person carried against his will. Indeed, it seems possible the intent of the law goes even further and requires that the contract, agreement or arrangement under which the "passenger" is carried must in some degree convict him of participation in, or of guilty connection with, the illegal transportation of the intoxicating liquor; for the first proviso at the end of the section says it shall not apply to persons *transporting* intoxicating liquor for personal use and not for illegal sale, and the second proviso exempts persons who were ignorant that the conveyance was being used for unlawful purposes. Thus, suppose a person were traveling armed, in a continuous journey peaceably through this State, as he would have a right to do under Section 4029, Revised Statutes 1929, in a public 'bus or railway coach, and became aware that some other passenger with whom he had no connection was carrying intoxicating liquor for sale in violation of the law of Missouri—would this make a case under Section 4517?

We have no intention of reading fanciful exceptions into the statute or of determining moot questions as the various situations in which it would be applicable or inapplicable. But it specifies the party to be charged must be either in charge of or a passenger upon the conveyance. This, with the provisos above referred to, indicates the Legislature gave some thought and desired to make some requirements as to the relation of the persons transported to the transac-

tion. If it had been the intention to make the section refer to anyone *riding* in the conveyance it would have been easy to say so. We cannot agree the requirement that one be either in charge or a passenger is not a material element of the offense aimed at. The information should have followed the language of the statute or have averred facts necessarily coming within its intent. It does neither, and for that reason is fatally defective.

II. The next assignment is that the information failed to charge the revolver was a weapon which could or might be used in inflicting bodily injury or death. A glance back at the section, as hereinbefore set out, will show that it forbids the carrying of "any revolver" (and other weapons and things specifically enumerated) "*or other dangerous weapon, article or thing, which could, or might, be used in inflicting bodily injury, or death upon another.*" (Italics ours.) Without going into a detailed analysis of the provision, we need only say it constitutes a legislative declaration that a revolver is at least prima-facie a dangerous weapon which could or might be used to inflict bodily injury, and the fact does not have to be alleged in the information. [State v. Sebastian, 81 Mo. 514, 516; State v. Lett, 63 W. Va. 665, 666, 60 S. W. 782.] See also State v. Baumann, 311 Mo. 443, 448, 278 S. W. 974, 975; State v. Riles, 274 Mo. 618, 623, 204 S. W. 1, 2; State v. Morris, 263 Mo. 339, 351, 172 S. W. 603, 606. If the circumstance that the weapon was rusty and would not fire, as defendant's evidence tended to show, had any bearing, it was a matter of defense. [State v. Riles, supra.] This point is ruled against the appellant.

III. The next question is whether the information is fatally defective because it fails to charge the intoxicating liquor was being transported in violation of the laws of this State. This is the point on which the learned Attorney-General has confessed error, and we think rightly so. The statute designates conveyances "in, or upon which any intoxicating liquor, including wine or beer, is carried, conveyed or transported *in violation of any provision of the laws of this State.*" (Italics ours.) The information simply charges the defendant did "unlawfully, wilfully and feloniously carry a revolver in an automobile in which intoxicating liquor was being transported."

In our opinion this is wholly insufficient. It is true that following this averment and a semicolon the information concludes with the words "contrary to the statutes in such case made and provided and

against the peace and dignity of the State of Missouri;" but these are formal recitals referring to the entire or ultimate crime charged, to-wit, the carrying of the weapon in the circumstancès specified, and not to each and every constitutive act and fact going to make up the offense. See State v. Donaldson, 243 Mo. 460, 472, 148 S. W. 79, 83. They cannot be treated as supplying necessary descriptive matter in the body of the information. As to their office and purpose see 31 Corpus Juris, Section 102, page 613, and Section 105, page 615 et seq. It is true also that Section 3563, Revised Statutes 1929, provides no information shall be deemed invalid for "omitting to charge any offense to have been committed contrary to a statute," etc., but this, again, refers to the formal conclusion characterizing the crime as a whole, and will not dispense with an allegation of the component fact that the intoxicating liquor was being transported in violation of the laws of this State. As said in 31 Corpus Juris, Section 251, page 701, "Unlawfulness, when an essential element of the definition of the offense, must be averred either expressly or by the use of such terms or such a statement of facts as conclusively implies it."

Appellant makes no contention that the exceptions appearing in the provisos at the end of the section should have been negatived in the information, and this is doubtless correct. [Sec. 4491, R. S. 1929; 31 C. J. sec. 269, p. 720; State v. Naething, 318 Mo. 531, 540, 300 S. W. 829, 832; State v. Gatlin (Mo., Div. 2), 267 S. W. 797; State v. Brown, 306 Mo. 532, 535, 267 S. W. 864, 865.] But the very presence of these exceptions emphasizes the materiality of the requirement made earlier in the section that the carrying of the dangerous weapons must accompany the transporting of intoxicating liquor *in violation of some provision of the laws of this State.* The spirit and purpose of the statute is to prevent the use of weapons in aid of such unlawful transportation.

IV. Two further assignments present constitutional questions. The first of these is that the gravamen of the offense defined by Section 4517, Revised Statutes 1929, is the *carrying of dangerous weapons* in specified circumstances, whereas the title of the act in which it was passed, Laws 1923, page 236, does not cover that subject as required by Section 28, Article IV, of the State Constitution. The other point made is that the section offends against Section 17, Article II of the Constitution in that it forbids the keeping and bearing of arms, though carried openly and not concealed. Neither of these points was presented to the trial court until after the case had been tried and the verdict returned. They were raised for the first time in the motion for a new trial, which was too late, under State v. French, 318 Mo. 619, 622, 300

S. W. 793, 794; State v. Lock, 302 Mo. 400, 424, 259 S. W. 116, 125; State v. Gamma, 215 Mo. 100, 114 S. W. 619; State v. Caldwell (Mo. App.), 245 S. W. 626. But even if the question were properly preserved we would not pass on it, since we have held the information insufficient on other grounds, and the general rule is that a court will decline to pass on the constitutionality of a legislative act if the case can be properly disposed of without doing so. [State v. Timeus, 232 Mo. 177, 182, 135 S. W. 26, 27.]

V. One or two other assignments should be noticed as the questions raised will probably recur if the case is tried again. Appellant contends there was a total failure of proof, in that the evidence did not show *he* carried the revolver on his person, or in, on, or about the automobile, the proof being only that it was found directly under the seat of the overturned car and that the other person riding therein at the time (the witness Harper) denied having it or knowing of its presence. Appellant says any conclusion of his own guilt can only be based on two superimposed inferences: first, that the revolver fell from the automobile, and second, that he wilfully carried it therein. But we do not think the second inference is built solely on the first. There was evidence that he furnished the car and drove it, and there was further evidence that the revolver was found with other articles belonging to him and some bearing his name. This was sufficient to take the case out of the rule against piling inferences.

Again, the State's own evidence showed that when the pistol was found at the scene of the collision it was dusty and rusty and the cartridge cylinder would not revolve (it was loaded with two shells). On being asked if this prevented the weapon's being used as a firearm, the sheriff answered: "I wouldn't want to have started out for anybody with it," and that he wouldn't think it could have been used "as a weapon." When produced at the trial, however, the cylinder did turn and the sheriff was not asked whether anything had been done to it to correct the operating defect while it had remained in his custody; neither was he qualified as an expert on firearms. The appellant urged upon the trial court and urges here that because of the foregoing testimony, which was all there was on that point, the revolver was not a dangerous or deadly weapon within the meaning of the statute, Section 4517, citing State v. Casto, 119 Mo. App. 265, 268, 95 S. W. 961; State v. Roberts, 39 Mo. App. 47; and State v. Larkin, 24 Mo. App. 410.

In the Casto case the defendant was prosecuted under a statute, which, as amended, is now Section 4029, Revised Statutes 1929, for carrying concealed a dangerous and deadly weapon, to-wit, a revolver.

His defense was that the main spring was broken so the weapon would not fire, and that he was searching for a gunsmith to have it repaired and was not carrying it as a firearm at the time of the alleged offense. The court said if this was true it was a good defense, citing the Roberts and Larkin cases, supra. Both these decisions are addressed only to the question as to the *intent* with which a pistol is carried, though, in the Larkin case it was further shown the weapon was unloaded, new and unused.

To the contrary is State v. Morris, supra (263 Mo. l. c. 347, 172 S. W. l. c. 604) where the defendant was charged with exhibiting a pistol in a rude, angry and threatening manner contrary to the present Section 4029. This court said that either in a prosecution for carrying concealed weapons or for brandishing the same, the questions as to whether a pistol was loaded and what the defendant's intentions were in having it in his possession, are immaterial. Cases from other states are cited approvingly which hold it is also immaterial whether or not the weapon was in good working order and would discharge at all.

In State v. Riles, supra (274 Mo. l. c. 623, 204 S. W. l. c. 2), the charge was carrying a dangerous weapon, a pistol, while intoxicated, but there was no proof one way or the other on either side as to whether it was loaded. The holding was that it does not devolve on the State to prove affirmatively a pistol was loaded, either where the charge is carrying the weapon concealed, or while intoxicated, or for a threatening exhibition thereof. But the court refused to rule "whether the defendant should ever be heard in his defense to say that the pistol carried by him was neither a dangerous nor a deadly weapon, because it was not loaded and therefore could not be fired," saying the question was not involved. State v. Baumann, supra (311 Mo. l. c. 448, 278 S. W. l. c. 975), goes over about the same ground.

Logically, it would seem, the question whether a pistol actually could have been discharged is less important where the prosecution is for having exhibited it in a threatening manner than where the charge is for carrying it concealed; for in the former instance the only direct effect of the display is to inspire terror or anger, disturb the peace, etc., which might be done with a harmless imitation, whereas in the latter the vice lies in the dangerous potentialities of the instrument. But the Legislature may have thought the possession or exhibition of a dangerous weapon in any of the numerous situations forbidden by the statute, Section 4029, might lead to the use of it—at any rate, whatever the reason may be all the cases in this State, unless it be the Morris case, supra, agree that in any such instance the weapon must in fact be dangerous.

This being true, cases applicable to the question in hand arising under Section 4029 should generally be applicable to Section 4517 which forbids the carrying of a "revolver, gun, or other firearm

. . . or other dangerous weapon . . . which could, or might, be used in inflicting bodily injury, or death upon another." We have already referred to the fact that the statute thus makes a revolver a dangerous weapon *per se*, but it is to be noted it does so only in its character as a firearm. A pistol which would not shoot could still be utilized as a bludgeon, billy or club, but if it were the subject of the charge in that aspect doubtless the information would be so drawn or words of description added showing the dangerous nature of the instrument or that it might or could be used in inflicting bodily injury.

That was not done in this case and no such theory is advanced. The question to be determined is whether the evidence wholly failed to show it was a dangerous or deadly weapon as a revolver. On that point the weight of authority is that unless it was so completely defective as to be incapable of firing at all, it was still a revolver. This does not mean some mere imperfection or maladjustment, which might at the time, with means at hand or readily obtainable, have been corrected. See 8 R. C. L. sec. 311, p. 290; Mitchell v. State, 99 Miss. 579, 55 So. 354, 34 L. R. A. (N. S.) 1174, note, Ann. Cas. 1913E. 512, note; People v. Simons, 124 Misc. 28, 207 N. Y. Supp. 56. In our opinion the evidence did not show any such condition.

VI. The remaining assignments complain of the giving and refusal of instructions, but it is unnecessary to discuss them as the questions presented doubtless will not arise again if the case is retried.

Judgment reversed and cause remanded. All of the judges concur.