## Commonwealth v. Grab

234

*Sidney Friedman*, for petitioner.

*J. Francis Yake, Jr.*, district attorney, contra.

SHEELY, J., October 27, 1945.—Defendant, after becoming involved in an altercation during the course of which he drew a 32 caliber Colt automatic pistol from his pocket, was arrested by the State police on a charge of carrying or transporting a firearm in violation of the provisions of the Uniform Firearms Act of June 24, 1939, P. L. 872, section 628, as amended, 18 PS §4628. The defendant, represented by competent counsel, waived indictment and entered a plea of nolo contendere to the charge. On February 9, 1945, he was called for sentence and the court, under the provisions of the Act of June 19, 1911, P. L. 1055, as amended, 19 PS §1051, suspended the imposition of sentence upon condition that the defendant pay the sum of $250 for the use of the county and that the pistol be confiscated. It then appeared that the clip, or magazine, was missing from the pistol, but there was no testimony as to the effect of the absence of the clip upon the operation of the pistol.

On May 12, 1945, after having secured new counsel, the defendant presented a petition for a writ of error coram nobis alleging that the automatic pistol carried by him was not a firearm within the meaning of the Uniform Firearms Act because it could not be dis-

charged while the clip was removed, and that this fact had just been discovered and could not have been discovered by the exercise of reasonable diligence before the plea was entered because no one but a firearms expert could have discovered the fact and would have been competent to testify to it, and because the pistol was in the custody of the police and was not available to the defendant. Testimony was taken on a rule to show cause why the writ of error coram nobis should not be issued. This testimony established the fact that this particular model of Colt automatic cannot be discharged while the clip is missing even though a cartridge be inserted in the chamber. The State police expert, called by the defendant, also testified that no one but an expert could have discovered this fact and that there are no experts in this locality other than himself.

The writ of error coram nobis is an unusual remedy and is to be used only in the particular circumstances for which it is designed. The law favors a finality in legal proceedings, and for this reason a court ordinarily cannot disturb a judgment after the expiration of the term in which it is entered, and for the same reason the time within which an appeal to a higher court may be taken is definitely limited. An exception to the rule that the court cannot disturb a judgment after term is in the use of the writ of error coram nobis.

". . . the true rule governing the use of the writ is . . .: 'The writ of error coram nobis is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication, made while some fact existed which if before the court would have prevented the rendition of the judgment, and which without any fault or negligence of the party was not presented to the court,' ": Commonwealth v. Harris, 351 Pa. 325, 329 (1945).

It is not to be used as a substitute for a motion for a new trial on the ground of after discovered evidence, although it has many of the features of such motion,

or to enable the defendant to resubmit his case on a different legal theory than that presented at the trial.

There are two essential elements to the granting of a writ of error coram nobis: there must be a fact which would have prevented the entry of the original judgment, and this fact must not have been known to the court through no fault or negligence on the part of the defendant. The first inquiry is whether the defendant was at fault or negligent in not presenting to the court the fact that the pistol could not be discharged while the clip was missing. On this point the defendant relies strongly upon the testimony of the State police expert that this fact could be determined only by an expert and that there are no experts available in this locality.

We have great respect for the ability of the expert and for his integrity, but in making this statement we think he went too far. Although his testimony was not contradicted, we are not bound to accept it if it is not reasonable or if it is contrary to human experience. The simple fact is that the firing pin of the pistol cannot be released by pulling the trigger if the clip is missing, but if the clip is inserted the firing pin can be released with an audible click. No technical knowledge is required to make this test, and any layman who considered it sufficiently important to make the test could determine this fact, although, without any technical knowledge, he might not know *why* the firing pin could not be released. But having determined the fact, it would be a simple matter to determine from the manufacturer, or an expert, the mechanical reasons therefor.

Even if we accept the statement that an examination by an expert is necessary to determine the fact, it is a matter of common knowledge that in this locality, as in all localities, there are gunsmiths and mechanics who are capable of disassembling and reassembling various types of guns, and of making repairs thereto. Had the defendant considered it important to determine whether the pistol could be discharged in its present condition,

it is inconceivable that he could not have found some one capable of making the test for him even though the weight of the testimony thus produced might have been reduced because of lack of experience. The fact that within three months of entering his plea, and after having secured new counsel, he was able to have the pistol examined by the State police expert indicates this. The services of this expert were available as well before, as after, the plea, had the defendant considered such services necessary. The fact that the gun was in the custody of the police did not prevent the test. The police would willingly have permitted the test, or the court would have ordered it upon request.

In his brief the defendant suggests that: "In the light of the record, the contention of the Commonwealth that the petitioner is guilty of lack of due diligence seems ridiculous. We submit that it is even more so when one considers that there are no reported cases in Pennsylvania on the question of law involved in this interpretation of the Uniform Firearms Act." This last sentence is the crux of the question of due diligence in ascertaining the fact that the pistol could not be discharged with the clip missing. There being no reported cases holding that a pistol incapable of being discharged is not a firearm within the meaning of the act, neither the defendant nor his then counsel considered it necessary or important to test the pistol or to have it tested before entering the plea of nolo contendere, but after present counsel conceived this interpretation of the act, a test did become important and there was then no difficulty in having it made.

Thus, it was not ignorance of the fact that the pistol could not be discharged, or inability to determine that fact, that prevented the fact from being presented to the court, but it was a failure to evolve the legal theory now being asserted or a conclusion on the part of counsel that the theory was not tenable. Just as a writ of error coram nobis is not intended to authorize the

court to review and revise its opinions, the writ is not intended to authorize a party, after a case has been disposed of, to revise his legal theory and resubmit the case. The defendant has failed to show that he could not have discovered this fact and presented it to the court by the exercise of due diligence had he considered the fact important in his defense.

As indicated above, a writ of error coram nobis cannot be granted unless the after discovered fact would have prevented the rendition of the judgment in the case. This raises the all important question, not heretofore decided in this State, whether a pistol which cannot be discharged because of the absence of a single part is a firearm within the meaning of the act. In defining the word "firearm", the act uses the terms "pistol" or "revolver", and the defendant would construe these terms to mean a pistol or revolver capable of being discharged. The term "firearm" clearly does not include either a wooden toy pistol or a single part of a pistol. The ability to discharge a cartridge is that which distinguishes a firearm from a toy or from incomplete parts of a firearm. But it does not follow that the mere fact that a gun cannot be discharged in its then condition takes it out of the general classification of a firearm. Most guns have safety devices that make it impossible to discharge the gun even by striking it with a hammer. A gun with an empty cartridge case jammed in the chamber cannot be discharged. A gun with the barrel plugged is incapable of being discharged. But by merely releasing the safety device, or removing the jammed cartridge case, or removing the plug, all three guns are rendered capable of being discharged. It could not be contended that any of the guns indicated were not firearms.

The normal method of loading an automatic pistol is to place the cartridges in the clip and insert the clip in the pistol. The same act which loads the pistol also

releases the safety device and renders the pistol capable of being discharged. The removal of the clip merely brings into play certain mechanism which acts as an additional safety device. The insertion of the clip does not make the gun a firearm—it merely releases the safety mechanism. We would define a firearm as a pistol or revolver capable of discharging a cartridge or which, by a simple operation, can be rendered capable of discharging a cartridge.

In State v. Nyhus, 176 Minn. 238, 222 N. W. 925, the defendant was charged with carrying a loaded auto-matic pistol. He contended the pistol was not loaded because the magazine containing the cartridges lacked a quarter of an inch of being pushed into place. The court dismissed this contention on the ground that (p. 926) : "Merely a touch of the thumb or finger would send the magazine home and the weapon would be ready to fire". In Crawford v. The State, 94 Ga. 772, 21 S. E. 992, it was held that under a statute prohibiting the carrying of a pistol concealed upon the person, so carry-ing a broken or inefficient pistol, even though carried for the purpose of having it repaired, is an offense, par-ticularly so if the individual superadds to his original purpose a resolution to produce the pistol suddenly and use it in making a hostile demonstration against one whom he happens to encounter.

In the case of Petition of Superintendent of Police of the City of Philadelphia, etc., 113 Pa. Superior Ct. 520 (1934), the Superior Court considered whether machines used ostensibly to sell packages of mints, and which would also discharge slugs which could be used to secure additional plays on the machines, but so made that by a slight adjustment they would discharge nickels as well as slugs, were gambling devices. The court held that they were essentially and inherently gambling devices since they could be converted into such by a simple operation requiring less than two

minutes. So in this case the weapon was essentially and inherently a firearm since it could be rendered capable of discharging a cartridge by the simple operation of loading the weapon.

We attach no significance to the fact that the defendant testified that the clip was at his home, 16 miles away. If the pistol was not a firearm with the clip 16 miles away it would not be a firearm with the clip one mile, or one foot, away. The purpose of the Uniform Firearms Act could be evaded by a potential robber by the simple expedient of having his confederate carry the clip for his automatic, and neither of them would be guilty of an offense until the clip was inserted in the gun. The Uniform Firearms Act itself indicates that inefficient pistols were intended to be included within the definition of firearm. By its terms, the act does not apply to a person engaged in repairing firearms having in his possession a firearm in the usual or ordinary course of his business, or to any person carrying a firearm unloaded and in a secure wrapper from the place of purchase to his home or place of business, or to a place of repair or back to his home or place of business. The act further provides that it shall not apply to "antique firearms unsuitable for use and possessed as curiosities or ornaments".

We conclude that the weapon carried by the defendant was a firearm within the meaning of the Uniform Firearms Act. Even if the fact that the pistol could not be discharged while the clip was missing had been brought to the attention of the court, that fact would not have prevented the rendition of the judgment.

What has been said disposes of the merits of the defendant's petition. There are two technical reasons why the relief prayed for could not be granted. The writ of error coram nobis is designed to recall some adjudication and to correct an erroneous judgment. Use of the writ presupposes that the court has adjudicated some issue of fact and has arrived at an erroneous

conclusion because not advised of the existence of an essential fact. In this case the court made no adjudication of an issue of fact. The defendant entered a plea of nolo contendere which, so far as concerns the indictment, is a plea of guilty.

"When a plea of nolo contendere is entered and accepted, it is not the province of the judge to adjudge the defendant guilty or not guilty. Evidence is heard only to aid the judge in fixing the sentence. If, after hearing evidence, the judge feels that it establishes the innocence of the defendant, he should advise the defendant to withdraw his plea of nolo contendere and stand a jury trial; just as in the case of a plea of guilty, which the judge, after hearing evidence, is satisfied was erroneously entered.": Commonwealth v. Rousch, 113 Pa. Superior Ct. 182, 185 (1934) ; Commonwealth v. Smith, 151 Pa. Superior Ct. 113, 130 (1942).

The defendant contends that had the missing fact been presented in this case it would have been the duty of the court to have advised the defendant to withdraw his plea. This may or may not be correct, but in any event it is not the duty of the court to search for facts which would establish the defendant's innocence; the court is justified in relying upon the defendant's plea of nolo contendere, particularly where the defendant is represented by competent counsel.

In all of the cases which we have examined, except one, the writ of error coram nobis has been issued after a trial on a plea of not guilty. The one exception is Sanders v. State, 85 Indiana 318, 44 Am. Reports 29, in which the defendant pleaded guilty to murder under circumstances which amounted to duress. In that case the plea was not the voluntary act of the defendant, and his counsel was influenced by the same circumstances of duress. In the present case the plea of nolo contendere was the voluntary act of the defendant and what he is actually seeking to avoid by a writ of error

coram nobis is not an erroneous adjudication by the court but an alleged erroneous decision on his part to enter the plea.

In this connection the defendant sought to attach some blame to the sergeant of the State police who made the information, and referred particularly to the sergeant's answer to the defendant's question whether the gun could be discharged with the clip missing. There is no intimation, nor could there be, that the sergeant wilfully deceived the defendant, and from an examination of all of the circumstances in connection with this case the sergeant would have been derelict in his duty had he not brought this prosecution.

Finally, the writ must be refused because it is designed only to correct an erroneous judgment and in this case no judgment has been entered. The court suspended the imposition of sentence * under the Act of 1911, as amended, which is not the entry of a judgment: Commonwealth v. Torr, 111 Pa. Superior Ct. 178; Commonwealth v. Rankin et al., 158 Pa. Superior Ct. 1 (1945). There being no judgment entered in the case, there is nothing for the court to review and to cause to be corrected.

And now, October 27, 1945, the rule to show cause why a writ of error coram nobis should not issue is discharged at the cost of the petitioner. An exception to this order is noted on behalf of the petitioner.

---

* Inadvertently the clerk recorded the action of the court as a suspension of sentence upon condition that the defendant pay a fine of $250. This was obviously an error as the imposition of sentence cannot be suspended and at the same time the defendant be sentenced to pay a fine: Commonwealth v. Denson, 157 Pa. Superior Ct. 257, 260 (1945). An order is being entered this date directing the correction of the record to conform to the action actually taken by the court: Commonwealth v. Hafner, 89 Pa. Superior Ct. 173 (1926); Mid-City Bank and Trust Company v. Myers et al., 343 Pa. 465 (1942).