Commonwealth *v.* Layton, Appellant.

Argued December 9, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Harold Yaskin,* Assistant Defender, with him *John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Deborah E. Glass,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 30, 1972:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY CERCONE, J.:

Defendant, Robert Layton, was indicted by the grand jury on a charge of unlawful possession of a firearm after having been convicted of a crime of violence (burglary).

At trial, it was shown that on October 15, 1970 the police arrived at defendant's home in response to a call from defendant's wife. The defendant opened the door, saw the police, and slammed the door. The arresting officer then entered and observed defendant with a gun at his side, which in the officer's estimation, defendant was trying to make work. After an abbreviated confrontation, the officer disarmed defendant of a .22 caliber revolver loaded with six live rounds and one spent shell. The Commonwealth stipulated that the pistol could not have been fired at the time it was found in defendant's possession.

Defendant was found guilty and after denial of post-trial motions, he was sentenced to a term of imprisonment of six to twelve months in the county prison and was ordered to pay a fine of $250. This appeal followed.

The question before us in this appeal is to what extent a firearm must be operable in order to fall within the provisions of the Uniform Firearms Act which provides: "(d) No person who has been convicted in

this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control; (a) As used in this section: 'Firearm' means any pistol or revolver with a barrel less than twelve inches, any shotgun with a barrel less than twenty-four inches, or any rifle with a barrel less than fifteen inches."[1]

There being no further clarification in the Act quoted above as to what is included in the term "firearm", the question arises as to what constitutes a firearm so far as its degree of operability is concerned in order to fall within the provisions of the Uniform Firearms Act.

The only Pennsylvania case discussing this issue is *Commonwealth v. Grab,* 54 Pa. D. & C. 233 (Adams, 1945), in which the court held that an automatic pistol which would not fire due to the absence of the cartridge clip would still fall within the meaning of the Uniform Firearms Act. I agree with the portion of the opinion in the *Grab* case wherein the court states: "This raises the all important question, not heretofore decided in this State, whether a pistol which cannot be discharged because of the absence of a single part is a firearm within the meaning of the act. In defining the word 'firearm', the act uses the terms 'pistol' or 'revolver', and the defendant would construe these terms to mean a pistol or revolver capable of being discharged. The term 'firearm' clearly does not include either a wooden toy pistol or a single part of a pistol. The ability to discharge a cartridge is that which distinguishes a firearm from a toy or from incomplete parts of a firearm. But it does not follow that the mere fact that a gun cannot be discharged *in its then condition* takes it out of the general classification of a firearm. Most guns have safety devices that make it impossible to

---

[1] Act of June 24, 1939, P. L. 872, §628(d), 18 P.S. §4628.

discharge the gun even by striking it with a hammer. A gun with an empty cartridge case jammed in the chamber cannot be discharged. A gun with the barrel plugged is incapable of being discharged. But by merely releasing the safety device, or removing the jammed cartridge case, or removing the plug, all three guns are rendered capable of being discharged. It could not be contended that any of the guns indicated were not firearms."

Defendant argues that an inoperable revolver is nothing more than a collection of metal shaped into the form of a revolver and is in the same character as a toy gun. With this definition I cannot agree. I further do not agree with the statement contained in the lower court's opinion that "a firearm, whether operable or not, comes within the purview of the Uniform Firearms Act".

Reference to other jurisdictions on this issue is only relatively helpful because of the vastly different statutes involved and the specific wording contained in each.[2] In addition, as pointed out in the briefs of this case, other jurisdictions have reached totally different results in interpreting their respective gun statutes.[3]

---

[2] Firearms, i.e., deadly weapons, dangerous weapons, offensive weapons, etc. Although some of these cases refer to statutes which do not use the description of "firearms", reference to them is for guidance and analysis only.

[3] In *People v. Simons*, 124 Misc. 28, 33, 207 N.Y.S. 56, 59 (1924), the New York court held that where a gun is imperfect and incapable of being discharged at all, "the court cannot hold it to be a revolver within the meaning of our laws . . . it has ceased to be a firearm. . .". In contrast, operability has been held *not to* be necessary to proof of a firearms violation by a Michigan court, in *People v. Jiminez*, 27 Mich. App. 633, 183 N.W. 2d 853 (1970), and in *People v. Halley*, 131 Ill. App. 2d 1070, 268 N.E. 2d 449 (1971), the Illinois court held that the state does *not have to* prove the pistols were loaded, had firing pins, functional barrels or were otherwise operable.

While keeping in mind these limitations, some review of decisions arising from other jurisdictions may be somewhat helpful.

Under a New York statute prohibiting the possession of a machine gun, the court in *People v. Woods,* 202 Misc. 562, 114 N.Y.S. 2d 611 (1952), held that the gun there involved was not a "machine gun" since two vital component parts were missing. The court noted that the missing parts had not been found in the possession of either defendant, and that the gun had apparently been brought into the country in its present condition. In contrast, the absence of a firing pin did not destroy the character of the firearm as a "machine gun" in *Commonwealth v. Bartholomew,* 326 Mass. 218, 93 N.E. 2d 551 (1950). The court there reasoned that although a weapon designed for firing projectiles may be so defective or damaged that it has lost its initial character as a firearm, that character is not lost when a relatively slight repair, replacement or adjustment would make it an effective weapon. In *People v. Guyette,* 231 Cal. App. 2d 460, 41 Cal. Rptr. 875 (1964), a sawed-off shotgun was disassembled into its three component parts and therefore was not immediately operable. There, the contention that no crime had been committed was rejected by the court where the evidence indicated that the gun could have been assembled and used in a matter of seconds. The court said: "A deadly weapon does not cease to be such by becoming temporarily inefficient nor is its essential character changed by the dismemberment if the parts may be easily assembled so as to be effective." In *People v. Boitano,* 18 N.Y.S. 2d 644 (1940), the court held that "a remnant of what was once an automatic revolver" was not a "firearm" within the meaning of a statute regulating the possession of firearms. The evidence showed that the revolver had a missing cartridge clip,

an unmoveable carriage, and an unworkable trigger. The court stressed that the defects were permanent so that it was totally unfit for use as a revolver. In *People v. Haskins,* 76 N.Y.S. 2d 636, 637 (1948), the City Court held that a .25 caliber pistol which it took *an expert* an hour to fire, was not a firearm within the statute, stating: "This court is of the opinion that a weapon is dangerous within the meaning of the statute either when it can be fired or when, with reasonable preparation, it can be made effective and fit for the use for which it was manufactured." Defendant refers to the cases of *Jarvis v. Commonwealth,* 306 Ky. 190, and *Bowman v. Commonwealth,* 309 Ky. 414. The Kentucky court there held that the inoperability of the revolver, along with the failure to produce evidence that the defendant had any additional gun parts or tools or facilities for repairing a revolver, placed the revolver outside the deadly weapons statute.

As previously mentioned, the above reference to cases from other jurisdictions is included only to point out the complexity of the issue, the varied methods of handling it, and the reasoning employed under the particular facts of each case. I do not accept the position of the Commonwealth and the lower court in its position that an inoperable gun would be, under the present circumstances, a per se violation of the Uniform Firearms Act. Nor do I accept defendant's position that an inoperable gun automatically falls outside the scope of this statute. As with any instrument, constructed of various parts and mechanisms, a point of disassembly and disrepair would eventually be reached wherein the object loses its essential characteristics to the degree that it could no longer be considered for or used to carry out the purpose for which it was designed. But a firearm does not cease to be a firearm simply because it is temporarily out of order. If by the

exercise of reasonable repairs it could be made operable, then it is to be considered a "firearm" under the Act. The question of what constitutes reasonable repairability rendering a weapon operable is a matter for the fact finder to determine under all the circumstances of a given case. In the instant case, since the Commonwealth itself introduced a gun which it stipulated clearly as not being operable, it therefore had the burden of proving, beyond a reasonable doubt, that the gun in question could be made operable by the exercise of reasonable repairs. No evidence was presented as to its degree of present disrepair, nor was evidence offered to inform the court as to what would be necessary to make the gun operable once again. For example, such evidence by the Commonwealth should include the number of parts missing and their availability, the types of parts and their functions, the difficulty or ease of reassembly, and the estimated length of time to complete repairs.

I believe that the trial judge erroneously interpreted the Uniform Firearms Act to apply regardless of the state of repairability and thus the Commonwealth under this view was not required to fulfill the burden that I interpret the law to place upon it so that the fact finder may decide the operability or inoperability of a weapon in order to determine whether or not it is a firearm under the Act.

I would vacate the judgment of sentence and order a new trial.

HOFFMAN and SPAULDING, JJ., join in this dissenting opinion.