**William M. ROUSE, a/k/a William M. Rouse, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12283.**

District of Columbia Court of Appeals.

Submitted April 13, 1978.

Decided Sept. 1, 1978.

Frederick C. Timberlake, Washington, D. C., appointed by this court, for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Frederick A. Douglas and Andrea L. Harnett, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Appellant was convicted of carrying a pistol without a license, D.C.Code 1973, § 22-3204. On appeal, he argues that a pistol which is disassembled "is not a working gun," and as a result cannot support a conviction under that section of the Code. We disagree.

I.

The evidence presented by the government in this case was as follows. At approximately 7:50 p. m. on August 4, 1976, Detective Mathis and his partner, Detective Anderson, were investigating narcotics offenses. It was still daylight. The detectives drove their unmarked police cruiser into an alley, and pulled up to an area where there were "burned out garages" on each side of the alley. At that time, Detective Mathis saw appellant "bent over" on the right side of one of the garages. Appel-

lant turned and faced Detective Mathis, then turned again toward the left side of the garage, which was six or seven feet away. Seeing a "shiny object" in appellant's hand, Detective Mathis told his partner, "The man's got a gun," and jumped out of the police cruiser. By this time, appellant had turned to the left side of the garage and had laid down the shiny object and covered it with some paper. While Detective Anderson detained appellant, Mathis went to the spot where appellant had just bent down and found a .32 caliber revolver frame. Detective Mathis asked appellant where the rest of the gun was, and appellant stated that the only thing he had put down was the frame. Both detectives then started looking in the garage for the rest of the gun. On the right side, where appellant was first seen bending over, Detective Anderson found the cylinder and the center pin for the frame lying together, along with two rounds of .32 caliber ammunition. Two additional rounds of .32 caliber ammunition were found approximately eighteen inches away.

At trial, Detective Anderson identified the .32 caliber frame, the cylinder, the center pin, and the .32 caliber ammunition. He testified that the cylinder fit the frame and demonstrated this by half-cocking the cylinder, slipping it in, inserting in the center pin, and hitting the release. He also showed how to load the revolver by taking out the pin and the cylinder, dropping in the bullets, and then replacing the cylinder and the pin. Detective Anderson estimated that the entire process of assembling and loading the weapon took approximately fifteen seconds. Both detectives testified that the revolver parts were "clean" while the rest of the garage appeared dusty and dirty. On August 5, 1976, the day after appellant's arrest, the reassembled pistol was successfully test-fired and found to be fully operable.

## II.

■ It is, of course, true that criminal statutes are to be strictly construed, but they are " 'not to be construed so strictly as to defeat the obvious intention of the legislature,' " *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974), *citing American Fur Co. v. United States,* 2 Pet. 358, 367, 7 L.Ed. 450 (1829).

■ In *Brown v. United States,* 58 App. D.C. 311, 312, 30 F.2d 474, 475 (1929), the United States Court of Appeals held that a defendant can be convicted of carrying a pistol so long as the pistol is "in such proximity to the person as to be convenient of access and within reach." In reaching that result, the court reasoned:

[A]s between an interpretation that will effectuate the obvious intent of our statute and one that will largely frustrate that intent, we unhesitating adopt the former. To rule that the weapon must be on the person would make possible the carrying of a deadly weapon concealed on the seat of an automobile, where it would be more readily accessible than it would be if concealed on the person. No such result is contemplated or permitted by the statute. [*Id.*]

*See also, Johnson v. United States,* D.C. App., 309 A.2d 497, 499 (1973), *cert. denied,* 416 U.S. 951, 94 S.Ct. 1960, 40 L.Ed.2d 301 (1974); *Wilson v. United States,* 91 U.S. App.D.C. 135, 136, 198 F.2d 299, 300 (1952). For similar reasons, we think that a conviction for carrying a pistol without a license can be sustained when all of the parts of a disassembled pistol are shown to have been conveniently accessible to the defendant, those parts can be quickly and easily reassembled into an operable gun, and the defendant was observed to be holding an object that reasonably appeared to be related to the gun. *See People v. Guyette,* 231 Cal.App.2d 460, 467, 41 Cal.Rptr. 875, 880 (1964); *People v. Theobald,* 43 Ill.App.3d 897, 900, 1 Ill.Dec. 925, 927, 356 N.E.2d 1258, 1260 (1976); *Jarvis v. Commonwealth,* 306 Ky. 190, 193, 206 S.W.2d 831, 833 (1947); *State v. Rector,* 328 Mo. 669, 680, 40 S.W.2d 639, 644 (1931); *Thornton v. State,* 529 S.W.2d 539, 541 (Tex.Cr.App.1975); *see also* the comprehensive discussions of the issue in *State v. Middleton,* 143 N.J.Super. 18, 27,

**792**

362 A.2d 602, 606–07 (1976) (dissenting opinion) and *Commonwealth v. Layton,* 220 Pa.Super. 435, 440–441, 288 A.2d 908, 910 (dissenting opinion);[1] and *see generally,* 79 Am.Jur.2d *Weapons and Firearms* § 16 at 21 (1975).

We cannot, therefore, rule as a matter of law that the disassembled gun in this case did not fall within the proscription of § 22–3204. The question was properly left to the jury.[2] *See People v. Tardibuono,* 174 Misc. 305, 306, 20 N.Y.S.2d 633, 634 (N.Y. County Ct.1940); *Commonwealth v. Layton, supra,* 220 Pa.Super. at 440–441, 288 A.2d at 910. Moreover, under the standard we have outlined today, the evidence amply supported the jury's conclusion that appellant was in possession of an operable gun. The conviction is, accordingly,

*Affirmed.*

---

1. The majority opinions in both *State v. Middleton* and *Commonwealth v. Layton* held that a defendant could be convicted of unlawful possession of a firearm, after having been convicted of a crime of violence, even though the firearm in question was inoperable and *even though there was no suggestion that the firearm could have been put in operating condition.* By contrast, we have held that a defendant cannot be convicted under D.C.Code 1973, § 22–3204 unless the government proves the operability of the firearm. *Anderson v. United States,* D.C.App., 326 A.2d 807, 811 (1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975).

2. The trial court instructed the jury in this case as follows:

You are instructed, further, that the Government must prove that the pistol was operable when seized; and further, it was capable of being fired. By "operable" at the time of seizure, I mean the pistol could readily be restored to a working condition.