COMMONWEALTH *vs.* RAYMOND F. BARTHOLOMEW & another.

Suffolk.    May 1, 1950. — July 5, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Firearms.    Practice, Criminal,* Special question to jury; Exceptions:
    whether error harmful; Verdict; Question of law or fact.  *Error,*
    Whether error harmful.

A weapon coming within the definition of a machine gun in G. L. (Ter.
    Ed.) c. 140, § 121, as amended, did not lose its character as such
    merely because of the absence of a firing pin which, although necessary
    to its operation, was easily replaceable.
Even if the submission of special questions of fact to the jury over the
    defendant's objection was beyond the judge's power in a criminal
    case, or if the jury's answers to the questions amounted to a special
    verdict which they had the privilege to return but could not be ordered
    to return, any error thereby resulting was harmless to the defendant
    where it appeared that all the essential elements of the crime charged
    were established by the answers and that the jury also returned .a
    general verdict of guilty.
Whether a certain weapon was a machine gun as defined in G. L. (Ter.
    Ed.) c. 140, §̇121, as amended, was a question of fact for the jury under
    appropriate instructions by the judge.

INDICTMENT, found and returned on September 16, 1949.
The case was tried in the Superior Court before *Kirk,* J.
*E. L. Schwartz,* (*M. L. Glazer* with him,) for the defend-
ants.
*J. F. McAuliffe,* Assistant District Attorney, for the
Commonwealth.
WILLIAMS, J.   This case is before us on a substitute con-
solidated bill of exceptions of the defendants, who have been
found guilty on an indictment which charges that "on the
ninth day of August in the year of our Lord one thousand
nine hundred and forty-nine, [they] did unlawfully possess a
machine gun as defined in § 121 of c. 140 of the Tercentenary
Edition of the General Laws of the said Commonwealth,
without permission under § 131 of the said c. 140."

There was evidence that the defendants were in joint possession of a "Thompson sub-machine gun of 45 calibre, which is a small arms calibre, . . . designed for rapid fire of the recoil action type capable of a maximum rate of fire of 350 to 400 rounds of ammunition per minute." The gun had no firing pin and in that condition was incapable of discharging a bullet. An expert witness testified that "the firing pin was a standard part and could be tooled by a machinist from a large nail or spike and that he inserted a firing pin" in the gun and fired it. The defendants excepted to the denial of their motions for directed verdicts presented at the conclusion of the evidence.

It is their contention that in the absence of the firing pin, without which the gun could not be fired, the gun was not a machine gun within the meaning of G. L. (Ter. Ed.) c. 140, § 121, as amended, which provides that "Any gun of small arm calibre designed for rapid fire and operated by a mechanism, or any gun which operates automatically after the first shot has been fired, either by gas action or recoil action, shall be deemed to be a machine gun for the purposes of . . . sections [one hundred and twenty-two to one hundred and twenty-nine, inclusive], and of sections one hundred and thirty-one and one hundred and thirty-one B." The offence of having in possession a machine gun is set forth in G. L. (Ter. Ed.) c. 269, § 10, as most recently amended by St. 1937, c. 250, § 1, wherein it is also made an offence for a person to carry "on his person or under his control in a vehicle, a pistol or revolver, loaded or unloaded, without permission under section one hundred and thirty-one of chapter one hundred and forty." The intent of § 10, which also penalizes the carrying of dirk knives, metallic knuckles and certain other dangerous weapons, is to protect the public from the potential danger incident to the unlawful possession of such weapons. It is to be noted that it is no less a crime to carry without a license a revolver or pistol which is unloaded than to carry one which is loaded. *Redus* v. *State*, 82 Ala. 53, 54. *Williams* v. *State*, 61 Ga. 417, 418. *Lamb* v. *State*, 7 Ohio N. P. 224. *Steele* v. *State*, 73 Tex. Cr.

352.  While it may be conceded that a weapon designed for firing projectiles may be so defective or damaged that it has lost its initial character as a firearm, see *Burnside* v. *State,* 105 Miss. 408, this character is not lost when a relatively slight repair, replacement, or adjustment will make it an effective weapon.  *Atwood* v. *State,* 53 Ala. 508.  *Redus* v. *State,* 82 Ala. 53.  *Fielding* v. *State,* 135 Ala. 56.  *Commonwealth* v. *Grab,* 54 D. & C. (Pa.) 233.  In the instant case the absence of the easily replaceable firing pin did not destroy the character of the implement in question as a machine gun.  *Williams* v. *State,* 61 Ga. 417.  *Mitchell* v. *State,* 99 Miss. 579.  Compare *People* v. *Boitano,* 18 N. Y. Sup. (2d) 644.

The defendants further excepted to the submission to the jury by the judge of the following four questions relating to the gun which had been marked exhibit 1:  "1.  Do the jury find that the defendant Bartholomew was in possession of the weapon marked Exhibit #1?  2.  Do the jury find that the defendant Hughes was in possession of the weapon marked Exhibit #1?  3.  Do the jury find that the weapon marked Exhibit #1 when in the possession of the defendants, or either of them, was capable of firing a shot or bullet?  4.  Do the jury find that the weapon marked Exhibit #1, was a machine gun as defined in G. L. (Ter. Ed.) c. 140, § 121?"  Having been instructed "that if they answered the first two questions in the negative, there would be no further instructions necessary, but that if either of the first two questions were answered in the affirmative, then they should answer the third and fourth questions after which further instructions as to their duties, if necessary would be given them," the jury answered questions 1, 2, and 4 in the affirmative and question 3 in the negative.  The record states that "The jury thereupon returned verdicts of guilty against each defendant."

No part of the judge's charge is reported.  Whether a judge in the trial of a criminal case may submit specific questions of fact to be answered by a jury, so far as we are aware, has never been decided in this Commonwealth.  Such a practice in civil cases is of long standing and does not de-

pend upon G. L. (Ter. Ed.) c. 231, § 124. *Wallace* v. *Ludwig*, 292 Mass. 251, 259. *Burgess* v. *Giovannucci*, 314 Mass. 252. General Laws (Ter. Ed.) c. 278, § 11, which contains without substantial change the provisions of St. 1807, c. 140, § 15, provides that in a criminal case "The jury shall try . . . all criminal causes committed to them, and, after having received the instructions of the court, shall decide, in their discretion, by a general verdict, both the fact and the law involved in the issue, or they may, at their election, find a special verdict."

It is not necessary to determine here whether the judge could properly adopt this established civil practice and submit specific questions over the objections of the defendants because, if he was in error, such error was cured by the subsequent return of general verdicts. The answers were not inconsistent with and were superseded by the verdicts. If the answers be considered as incorporated in the verdicts and thereby a part of them, the validity of the verdicts is not affected. "A verdict may . . . be good as a general verdict, though some fact is specially found, by way of exception or qualification." *Dyer* v. *Commonwealth*, 23 Pick. 402, 404. *Commonwealth* v. *Fischblatt*, 4 Met. 354, 355. See *Commonwealth* v. *Stebbins*, 8 Gray, 492; *Commonwealth* v. *Lang*, 10 Gray, 11; *Ashton* v. *Touhey*, 131 Mass. 26, 29; *Minot* v. *Boston*, 201 Mass. 10, 13.

A like conclusion is reached if, as contended by the defendants, the answers of the jury to the special questions be considered as a special verdict. "In the ordinary case of a general verdict of guilty, the jury, by the very terms of their verdict, find the prisoner guilty of all the material allegations in the indictment. Not so in a special verdict, for the very object of this departure from the usual form is presumed to be for the purpose of declaring the prisoner guilty of certain facts only, with a view of submitting the question, whether those facts authorize a general verdict of guilty, to the judgment of the court. In such a case, if the facts thus found do not include all the essential elements of the offence charged upon the prisoner, he cannot be convicted." *Com-*

*monwealth* v. *Call,* 21 Pick. 509, 514. Here the answers to the questions appear to include findings as to all the essential elements of the offence charged. It was stated, however, by Chief Justice Shaw in *Commonwealth* v. *Anthes,* 5 Gray, 185, at pages 206–207, "although they [the jury] may return a special verdict, they are not bound to do so." See 1 Chitty's Cr. Law (4th Am. ed.) 642; 1 Starkie, Cr. Pl. (2d ed.) 351. The history of special verdicts in England and in this Commonwealth need not be related. See *Frati* v. *Jannini,* 226 Mass. 430, 431–432. Instances of their return may be found in the following cases. *Commonwealth* v. *Call,* 21 Pick. 509. *Commonwealth* v. *Griffin,* 21 Pick. 523. *Commonwealth* v. *Fischblatt,* 4 Met. 354. *Commonwealth* v. *Porter,* 10 Met. 263, 282. *Commonwealth* v. *Strain,* 10 Met. 521. *Commonwealth* v. *Davidson,* 1 Cush. 33. *Commonwealth* v. *Morrill,* 8 Cush. 571. See *Dyer* v. *Commonwealth,* 23 Pick. 402. If the answers here amount to a special verdict and if as matter of law the return of such verdict is a privilege of the jury and something which cannot be ordered by the judge, which we do not decide, the error, if any, was remedied by the return of the general verdicts.

An additional objection to the submission of the fourth question to the jury is on the ground that whether the gun was a machine gun as defined in G. L. (Ter. Ed.) c. 140, § 121, as amended, was a question of law for the judge to decide and not a question of fact for the jury. We perceive no merit in this contention. The question was one of fact to be answered under appropriate instructions. *Commonwealth* v. *Squire,* 1 Met. 258, 259. *Hutchinson* v. *State,* 62 Ala. 3. *People* v. *Tardibuono,* 174 Misc. (N. Y.) 305. *Farris* v. *State,* 64 Tex. Cr. 524, 530. *Miles* v. *State,* 77 Tex. Cr. 597. Compare *Mitchell* v. *State,* 99 Miss. 579. As above stated, the answer, if erroneously received, was superseded or cured by the general verdicts and it is to be assumed that full and accurate instructions were given the jury before they returned their verdicts. *M & M Co. Inc.* v. *Hood Rubber Co.* 226 Mass. 181, 184.

*Exceptions overruled.*