STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEO LAMONT MIDDLETON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 17, 1976—Decided July 7, 1976.

Before Judges FRITZ, SEIDMAN and MILMED.

Mr. *Stanley C. Van Ness,* Public Defender, attorney for appellant (Mr. *Thomas A. Pavics,* Assistant Deputy Public Defender, of counsel).

Mr. *William F. Hyland,* Attorney General of New Jersey, attorney for the respondent (Mr. *Robert A. Jacobson,* Deputy Attorney General, of counsel).

PER CURIAM. Defendant was charged in a four-count indictment with: (count 1) unlawful possession of a pistol without first having obtained a permit to carry the same (N. J. S. A. 2A:151–41(a); (count 2) possession of a firearm, having been convicted of breaking and entering and larceny, atrocious assault and battery, and murder (N. J. S. A. 2A:151–8); (count 3) carrying a pistol with the intent to use it unlawfully against another (N. J. S. A. 2A:151–56), and (count 4) assaulting a patrolman with an offensive weapon (a pistol) (N. J. S. A. 2A:90–3).

Defendant sought pretrial dismissal of the first three counts on the ground that the pistol was inoperable. The first count was dismissed with the consent of the State. The second and third counts were retained. Defendant then moved for a severance of the second count from the third and fourth counts, his position being, in effect, that to allow the joinder

to stand would prejudice him since the State would in the circumstances be allowed to place his prior criminal record before the jury whether or not he chose to take the stand. The motion was denied, the trial judge stating that he felt that as to evidence of the prior convictions a limiting instruction to the jury is sufficient. Continuing his claim of prejudice before a jury by the joinder, defendant then waived trial by jury. In the nonjury trial which followed he was found guilty on the second, third and fourth counts. On the second count he was sentenced to the State Prison for a term of two to three years. The third count was merged into the fourth count and defendant was sentenced on the fourth count to a concurrent two to three-year term for the assault with a pistol

On this appeal defendant contends that (1) "the trial judge abused his discretion when he refused to sever from the trial, count two of the indictment, possession of a firearm by a felon, thereby forcing the defendant to waive his right to trial by jury, and depriving him of a fair trial," and (2) "the motion for judgment of acquittal on count two, possession of firearm by a felon, should have been granted because the State stipulated that the pistol was inoperable."

Defendant argues that

* * * conviction under *N. J. S.* 2A:151–8 cannot be had unless the State proves that the "firearm" in question is either operable or capable of being rendered so by a "minor adjustment" by the defendant.

We disagree. *N. J. S. A.* 2A:151–8 provides, in pertinent part, that

Any person, having been convicted in this State or elsewhere of any crime enumerated in section 2A:151–5, whether or not armed with or having in his possession any firearm or dangerous instrument enumerated in section 2A:151–5, * * * who purchases, owns, possesses or controls any firearm or any of the said dangerous instruments, is guilty of a misdemeanor.

Defendant's argument suggests a question in terms of ascertaining whether the Legislature meant, as it said, *any* firearm, or meant rather, any *operable* firearm. The dissent suggests that guidance is to be found by first reference to *N. J. S. A.* 2A:151-1(a) and then a synthesis which includes *N. J. S. A.* 2A:151-41 and *State v. Morgan,* 121 *N. J. Super.* 217 (App. Div. 1972). No such tortuous reasoning or supplied intent is necessary, for in its interdiction in *N. J. S. A.* 2A:151-8 of possession of "any firearm or any of the *said* dangerous instruments," the Legislature told us expressly that its intent was to prohibit possession *of the weapons* enumerated in *N. J. S. A.* 2A:151-5. The weapons enumerated therein specifically include "any firearm, whether or not capable of being discharged."

In *People v. Jiminez,* 27 *Mich. App.* 633, 183 *N. W.* 2d 853, 854 (1970) the Court of Appeals of Michigan, quoting from its opinion in *People v. Bailey,* 10 *Mich. App.* 636, 640, 160 *N. W.* 2d 380, 382 (1968), pointed out:

"Courts should look for reasonable rather than tortured interpretations of statutes, or exceptions thereto, so as to reflect the intent of the legislature. Sergeant v. Kennedy (1958), 352 Mich. 494, 90 N. W. 2d 447. 'Dangerous weapons', when used in the statute, should not be narrowly construed by us."

And in *Barrett v. United States,* 423 *U. S.* 212, 96 *S. Ct.* 498, 46 *L. Ed.* 2d 450 (1976), the court said:

A criminal statute, to be sure, is to be strictly construed, but it is "not to be construed so strictly as to defeat the obvious intention of the legislature." American Fur Co. v. United States, 2 Pet 358, 367, 7 L Ed 450 (1829) ; Huddleston v United States, 415 U S, at 831, [39 L Ed 2d 782], 94 S Ct [1262] at 1271. [423 U. S. at 218, 96 S. Ct. at 502, 46 L. Ed. 2d at 455]

In seeking to discover legislative intent we must read the statute in the light of, among other things, the mischief sought to be eliminated. *Brewer v. Porch,* 53 *N. J.* 167, 174 (1969). From our review of these two interrelated sections of the Gun Control Law (*N. J. S. A.* 2A:151-1 *et*

*seq.*) we discern a clear legislative design in *N. J. S. A.* 2A:151–8 to proscribe the possession by (among other persons) convicted felons of any firearm, whether operable or not. It is obvious to us that one of the evils sought to be suppressed by the statute was the possibility of any show of force, real or apparent, by one who had already been proven a felon. *Cf. State v. Tims,* 129 *N. J. Super.* 399 (App. Div. 1974), certif. den. 66 *N. J.* 326 (1974). Defendant's motion to dismiss the second count of the indictment was properly denied.

█ We do, however, find substantial merit in defendant's claim that the second count should have been severed for trial. Any charge under *N. J. S. A.* 2A:151–8 requiring, as it does, proof of defendant's prior conviction should not be tried together with other charges of crime despite the fact that such procedure does not offend due process of law. *Spencer v. Texas,* 385 *U. S.* 554, 87 *S. Ct.* 648, 17 *L. Ed.* 2d 606 (1967), reh. den. 386 *U. S.* 969, 87 S. Ct. 1015, 1016, 18 *L. Ed.* 2d 125 (1967).

A joint trial of a charge under *N. J. S. A.* 2A:151–8 with other charges of crime will invariably raise the problem encountered in this case—revelation of a prior conviction, necessary to convict on the *N. J. S. A.* 2A:151–8 charge of which such prior conviction is a necessary element, but inadmissible with respect to the other charges if defendant elects not to testify and if not justified on other grounds. *Evid. R.* 55.

█ It was error for the trial court to deny the requested severance. The resulting prejudice to defendant is obvious. His subsequent waiver of a jury trial and decision to testify in his own behalf did not mitigate the harm. Neither could any "limiting instruction" to the jury. A reversal is, accordingly, required.

Defendant's conviction on the three counts is reversed and new trials are ordered as follows: (a) on the third and fourth counts jointly, and (b) on the second count separately.

SEIDMAN, J. A. D. (dissenting in part). I agree that defendant's conviction should be reversed, but I would limit the new trial to the third and fourth counts (as merged by the court below). The second count, in my view, should be dismissed.

The first and second counts of the indictment here involved charged defendant with, respectively, possession of a pistol without having first obtained a permit therefor, contrary to *N. J. S. A.* 2A:151–41(a); and, "being a person having been convicted of Breaking and Entering and Larceny, Atrocious Assault and Battery, and Murder," with "own[ing], possess[ing] or control[ling] a firearm," contrary to *N. J. S. A.* 2A:151–8.

At the opening of the trial defense counsel moved to dismiss these counts (as well as a third count for possessing a pistol with intent to use it unlawfully against another (*N. J. S. A.* 2A:151–56)), on the ground that the pistol in question[1], the possession of which was not denied, was "totally inoperable." The prosecutor acknowledged the inoperability of the weapon and consented to the dismissal of the first and second counts, but not the third. However, he later withdrew the consent insofar as it related to the second count. The first count was dismissed. The motion was denied as to the second and third counts, the trial judge holding, with respect to the former, that "operability of the firearm is not an issue under this count of the indictment."

Defendant argues on this appeal that "the motion for judgment of acquittal"[2] on the second count should have been granted "because the State stipulated that the pistol was inoperable."

---

[1]The weapon was one designed to eject "BB" pellets by means of a carbon dioxide cartridge.

[2]The record does not disclose such motion. None was made at the end of the State's case. At the close of all the evidence defense counsel merely made a closing argument to the trial judge, who heard the matter without a jury.

The precise issue here, which seems to be one of novel impression in this State (at least my research has disclosed no reported case squarely in point), is whether possession of a concededly inoperable[3] firearm may constitute a violation of *N. J. S. A.* 2A:151-8, which, to the extent pertinent here, provides as follows:

Any person, having been convicted in this State or elsewhere of any crime enumerated in section 2A:151-5, whether or not armed with or having in his possession any firearm or dangerous instrument enumerated in section 2A:151-5, * * * who purchases, owns, possesses or controls any firearm or any of the said dangerous instruments, is guilty of a misdemeanor.[4]

There was competent evidence below, not controverted on this appeal, that defendant had previously been convicted of certain crimes encompassed within *N. J. S. A.* 2A:151-5, a statute which mandates an additional sentence for

[a]ny person who commits or attempts to commit an assault, robbery, larceny, burglary, breaking and entering, rape, murder, mayhem, arson, abduction, extortion, kidnapping, sodomy or treason * * * when armed with or having in his possession any firearm, whether or not capable of being discharged or dangerous instrument of any kind * * *,

Since defendant was charged as a convicted felon with the illegal possession of a *firearm,* reference should be made at the outset to the definition of such weapon in *N. J. S. A.* 2A:151-1(a):

Firearm or firearms includes any pistol, revolver * * * or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectile, ball, slug, pellet, missile or bullet, * * *.

---

[3]There is no contention in this case that the firearm could have been put in operating condition by a simple repair or adjustment.

[4]Defendant here was accused in the second count of the indictment specifically with owning, possessing or controlling a firearm. He was not charged with the possession of "any dangerous instrument" enumerated in *N. J. S. A.* 2A:151-5.

It shall also include, without limitation, any firearm which is in the nature of any air gun, spring gun, *carbon dioxide or compressed air gun or pistol*, or other weapon of a similar nature in which the propelling force is * * * *carbon dioxide*, * * * and ejecting a bullet or missile smaller than 3/8 of an inch in diameter, with sufficient force to injure the person. [Emphasis supplied]

The question of whether a weapon must be operable to come within the above definition of a firearm was raised, but answered only inferentially, in *State v. Morgan*, 121 *N. J. Super.* 217 (App. Div. 1972). There the alleged violation was of a companion statute, *N. J. S. A.* 2A:151–41, proscribing the carrying or possessing, among other enumerated weapons, of a pistol or revolver without first having obtained a permit therefore (unless otherwise exempted). Defendant sought an acquittal, contending that since the revolver in his possession was inoperable it was not a firearm as defined in the statute, and no permit was required. In rejecting the argument this court held:

There is no merit to this appeal. The evidence was to the effect that the firing pin of the revolver had been filed down and, in order for the gun to be fired, it would only be necessary to insert a thin piece of metal or paper between the pin and the cartridge. We also note that the revolver contained five cartridges of live ammunition within its chamber.

The element of operability stems from the definition of the term "firearm" in *N. J. S. A.* 2A:151–1 as a "revolver." * * *

It may become a question of fact as to whether a particular device possesses or retains the characteristics of a firearm as thus defined [in subparagraph (a) of the statute]. Conceivably, although having initially possessed such characteristics, it may have lost them through mutilation, destruction or disassembly. Where there appears to be a legitimate dispute as to whether any such device possesses or retains the essential characteristics of a weapon, it is appropriate for the parties to offer proof with respect to its operability. That question should be resolved as other questions of fact. [121 *N. J. Super* at 219.] [5]

---

[5] See also, *State v. Yarusso*, 105 *N. J. Super.* 311, 312–313 (Cty. Ct. 1969), in which the court, without deciding the matter, noted that although there was merit to defendant's contention that he did not possess a rifle at the time of his arrest within the meaning

The clear implication in *State v. Morgan, supra,* that a pistol or revolver may be so defective or damaged as to be wholly incapable of being fired, thereby losing its character as a firearm, is in accord with the law in other jurisdictions that possession of such instrument does not violate a statute prohibiting the carrying of concealed weapons or requiring permits for pistols and revolvers. *Redus v. State,* 82 *Ala.* 53, 2 *So.* 713 (Sup. Ct. 1913) ; *People v. Jackson, Cal. App.* 2d 341, 266, 72 *Cal. Rptr.* 162 (D. Ct. App. 1968) ; *Bowman v. Commonwealth,* 309 *Ky.* 414, 217 *S. W.* 2d 967 (Ct. App. 1949) ; *Jarvis v. Commonwealth,* 306 *Ky.* 190, 206 *S. W.* 2d 831 (Ct. App. 1947) ; *Commonwealth v. Bartholomew,* 326 *Mass.* 218, 93 *N. E.* 2d 551 (Sup. Jud. Ct. 1950) ; *Burnside v. State,* 105 *Miss.* 408, 62 *So.* 420 (Sup. Ct. 1913) ; *People v. De Witt,* 285 *App. Div.* 1115, 140 *N. Y. S.* 2d 190 (App. Div. 1955) ; *People v. Simons,* 124 *Misc.* 28, 207 *N. Y. S.* 56 (Ct. Spec. Sess. 1924) ; *Miles v. State,* 77 *Tex Cr. R.* 597, 179 *S. W.* 567 (Ct. Crim. App. 1915).[6] See Annotation, "Validity and Construction of Gun Control Laws," 28 *A. L. R.* 3d 845, 862 (1969). However, a weapon that is only temporarily inoperable, or may be made effective by minimum effort or a relatively slight repair or adjustment, or is not so out of repair that it cannot be fired, and may be quickly assembled, is still a firearm. *United States v. Cosey,* 244 *F. Supp.* 100 (E. D. La. 1965) (involving National Firearms Act, 26 *U. S. C. A.* §§ 5841, 5848 (1, 4))[7] ;

---

of *N. J. S. A.* 2A:151–1(a) and (c), because the weapon lacked a firing pin and bolt, the issue could not be decided on a motion to dismiss the indictment charging defendant with a violation of *N. J. S. A.* 2A:151–41, but would have to await trial. *Cf. State v. Seng,* 91 *N. J. Super.* 50, 52 (App. Div. 1966).

[6]It is to be observed that the fact that the instrument may be inoperable will not bar a charge of possession of a weapon with intent to use the same against another, or of a dangerous or deadly weapon. See *State v. Rector,* 328 *Mo.* 669, 40 *S. W.* 2d 639 (Sup. Ct. 1931) ; *People v. Simons, supra. Cf. People v. Favalora,* 42 *Cal. Rptr.* 3d 988, 117 *Cal. Rptr.* 291 (Ct. App. 1974).

[7]But see *United States v. Thompson,* 202 *F. Supp.* 503 (N. D. Cal. 1962), holding that a shotgun without a firing pin is not a firearm, possession of which is made illegal by the National Firearms Law.

People v. Guyette, 231 Cal. App. 2d 460, 41 Cal. Rptr. 875 (D. Ct. App. 1964); Commonwealth v. Bartholomew, supra; Mitchell v. State, 99 Miss. 579, 55 So. 354 (Sup. Ct. 1911); Commonwealth v. Layton, 452 Pa. 495, 307 A. 2d 843 (Sup. Ct. 1973); Farris v. State, 64 Tex. Cr. R. 524, 144 S. W. 2d 249 (Ct. Crim. App. 1912). People v. Jiminez, 27 Mich. App. 633, 183 N. W. 2d 853 (Ct. App. 1970), cited by the majority, is inapposite, since the court there held that the definition of "pistol" in the Michigan statute (substantially different from that contained in our statute) prohibiting the carrying of concealed weapons did not require a gun to be operable.

Although the State clearly acknowledged below that defendant's possession of the concededly inoperable weapon would not sustain a conviction of possession of a pistol without a permit, its position on this appeal is, nevertheless, that "[t]he fact that the pistol was inoperative is of no legal consequence since the interest of the Legislative in enacting N. J. S. A. 2A:151–8 was to keep weapons, operable or not, out of the possession of those people who have been convicted of certain serious crimes." The reasoning is this:

* * * Firstly, direct reference is made in N. J. S. A. 2A:151–8 to N. J. S. A. 2A:151–5. From this direct reference it can be inferred that the Legislature was attempting, in enacting N. J. S. A. 2A:151–8, to combat the very same evil which N. J. S. A. 2A:151–5 was formulated to deter; the use of any firearm or dangerous instrument in the commission of a crime. N. J. S. A. 2A:151–8 simply carries the deterrence one step further, imposing a sanction upon those individuals who have, in the past, demonstrated a propensity to commit serious crimes. If this interpretation is correct, then the fact that the pistol which defendant possessed was inoperable is irrelevant, since firearm as used in N. J. S. A. 2A:151–5 includes all guns, ". . . whether or not capable of being discharged." Second, N. J. S. A. 2A:151–8 makes possession of a pistol by a convicted felon a crime, whether or not a firearm was used in the previous crime for which the individual was convicted.

While this argument has superficial appeal, a close examination reveals its inherent weaknesses. Our concern is with whether the device here involved is a "firearm," as that

word is defined in *N. J. S. A.* 2A:151–1. It seems to me that if a totally inoperable gun is not a "firearm," as so defined, it should not matter whether the statute allegedly violated is *N. J. S. A.* 2A:151–41 or *N. J. S. A.* 2A:151–8. In both, to the extent pertinent here, it is the possession of a "firearm" that is prohibited. Although one refers to possession of a pistol or revolver without a permit therefor, and the other to possession of a firearm by a felon, that distinction can have no logical effect upon the meaning of the word "firearm."

The majority ascribes to the Legislature an intent in *N. J. S. A.* 2A:151–8 to prohibit "possession *of the weapons* enumerated in *N. J. S. A.* 2A:151–5," such weapons including "any firearm, whether or not capable of being fired." In my view, such interpretation is a labored one. Undoubtedly, the clear legislative intent in the former is that certain persons are not to have weapons. Among them are those who have been convicted of the offenses enumerated in § 5. Whether they were armed at the time of the offenses is wholly immaterial. As for the latter statute, the equally clear legislative intent is to prescribe additional sentences in the case of the commission of the specified offenses while the perpetrator is armed with any firearm, "whether or not capable of being discharged," or of any of the enumerated dangerous instruments. The qualifying words do not define "firearm"; the definition is contained in *N. J. S. A.* 2A:151–1 and applies to the entire chapter. They merely emphasize that *for the purpose of* § 5 the person committing the offense will be deemed to be armed regardless of the operability of the weapon. In fact, under that section it is enough if the person is armed with "any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for any of the foregoing." *Cf. State v. Cooper,* 140 *N. J. Super.* 28 (Law Div. 1976). The "evil contemplated by the statute [*N. J. S. A.* 2A:151–5] is the possession of any object, *during the commission of one of the enumerated crimes,* which, if it were to be purpose-

fully used, contains a substantial potential for the infliction of harm or, much less, *a capacity for the mere threatening of harm.*" *State v. Tims,* 129 *N. J. Super.* 399, 402 (App. Div. 1974), certif. den. 66 *N. J.* 326 (1974) (emphasis supplied). And see *State v. Brewer,* 142 *N. J. Super.* 70 (App. Div. 1975), aff'd 70 *N. J.* 329 (1976), holding that even a fist in a pocket directed at the victim during a robbery is a device capable of being mistaken for a weapon.

In short, if the Legislature had intended by *N. J. S. A.* 2A:151–8 to forbid the possession of firearms by persons previously convicted of certain felonies, regardless of their inoperability, one may reasonably assume that it would have resorted to language similar to that used in *N. J. S. A.* 2A:151–5.[8] *Cf. State v. Meinken,* 10 *N. J.* 348, 354 (1952).

In *Commonwealth v. Layton, supra,* the appeal concerned the question of whether an object from which a shot could not be fired was a firearm under a section of the Uniform Firearms Act (18 *Pa. S.* § 7106) which prohibited persons

---

[8]It is noteworthy that while the definition of "firearm" in the proposed New Jersey Penal Code (Oct. 1971) (2C:39–1(e)) is identical to that contained in *N. J. S. A.* 2A:151–1(a), the term "weapon" is separately defined (2C:39–1(p)):

* * *"weapon" means anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes (1) firearms even though not loaded or lacking a clip or other component to render them immediately operable; (2) components that can readily be assembled into a weapon * * *. [Emphasis supplied]

Possession of any "firearm or weapon" without a license is made a crime under 2C:39–3(q). Subsection (k) prohibits the possession of any "firearms or weapons" by any person who has been convicted of the offenses enumerated therein "whether or not or not armed with or having in his possession any firearms or weapons." And 2C:44–3(e) provides for an extended term of imprisonment (replacing *N. J. S. A.* 2A:151–5) where the defendant "is a dangerous armed criminal because in committing the crime of which he was convicted he employed a firearm, as defined in Section 2C:39–1(e), or other dangerous instrumentality of any kind in committing the crime."

It would appear from these provisions that to constitute a firearm under the proposed Penal Code the instrument would have to be operable or readily made so.

previously convicted of "a crime of violence" from owning or possessing a firearm. The court there held that, since both sides agreed that the object was not operable, defendant had not violated that section of the statute. *Cf. People v. De Falco,* 176 *Cal. App.* 2d 590, 1 *Cal. Rptr.* 578 (D. Ct. App. 1960); *State v. Irebarra,* 519 *P.* 2d 1246 (Haw. Sup. Ct. 1974). And in *Commonwealth v. Ponds,* 236 *Pa. Super.* 107, 345 *A.* 2d 253 (Super. Ct. 1975), which held that possession of a sawed-off shotgun, though inoperable, was an offense under a section of the Crimes Code declaring it to be a misdemeanor to possess any *offensive weapon,* the court was careful to note that the requirement was not spelled out in the statutory definition of "offensive weapon," whereas, in another section of the code defining "weapon" (in words identical to those in the proposed New Jersey Penal Code, 2C:39-1(p) (see footnote 8 *supra*)), the legislative intent was that the weapon must be operable.

For all the foregoing reasons I would hold that defendant's possession of an inoperable firearm was not sufficient for a conviction under *N. J. S. A.* 2A:151-8. I do not mean to imply, however, that the inoperable weapon might not have sustained a charge under that section of possessing a "dangerous instrument." Since defendant was specifically accused of possessing a firearm, that issue is not before us.