**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Abel Anthony VIGIL, Jr., Defendant–Appellee.**

**No. 86SA406.**

Supreme Court of Colorado, En Banc.

July 18, 1988.

---

Barney Iuppa, Dist. Atty., Fourth Judicial Dist., Daniel H. May, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

David F. Vela, State Public Defender, Paul R. Bratfisch, Deputy State Public Defender, Colorado Springs, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The People appeal from an order of the district court dismissing a charge of possession of a dangerous weapon brought against the defendant, Abel Anthony Vigil, Jr. The dismissal was based on the court's conclusion that because the short shotgun possessed by the defendant lacked a firing pin, it was not a "dangerous weapon" within the meaning of the relevant statute, section 18–12–102(1), 8B C.R.S. (1986). We disagree with that conclusion, and therefore reverse the order of dismissal and remand the case to the district court with directions to reinstate the charge.

## I.

On July 22, 1986, Colorado Springs police officers were called to a location where an automobile had slid sideways and come to a stop in a city street, blocking a lane of traffic. The defendant was leaning against the side of the vehicle and volunteered that he was the owner and driver. One of the officers asked the defendant to accompany him to a police cruiser parked nearby. As the defendant did so, the officer noted that Vigil smelled strongly of alcoholic beverage, had slurred speech, and staggered. After the defendant was seated in the police cruiser, an officer asked him his name and requested that he produce his driver's license and vehicle registration. The defendant did not respond, and persisted in his silence despite repeated requests for this information. The officers then decided to check the defendant's vehicle for some type of identification. In the course of this inspection an officer opened the glove box and discovered a plastic bag containing a sawed-off .410 gauge shotgun and nine unfired .410 gauge shotgun shells. The officers then determined the defendant's identity by checking the license plate number of his car with the Department of Motor Vehicles, and transported him to police headquarters. There, the defendant told the officers that the shotgun would not fire and that he was taking it in to be fixed.

Based upon the foregoing incident, the district attorney filed a direct criminal information in El Paso County District Court charging defendant Vigil with several offenses, including possession of a dangerous weapon in violation of section 18–12–102, 8B C.R.S. (1986). The defendant moved to dismiss the charge of possession of a dangerous weapon on the basis that the sawed-off shotgun did not fit the statutory definition of a dangerous weapon. The trial court held an evidentiary hearing on the motion after which it entered a written order.

Based on the evidence presented at the hearing, the trial court made the following findings concerning the shotgun discovered in the glove box of the defendant's vehicle:

11. The weapon was "mechanically functional", had a 10 and 5/16 inch long barrel and was 13 and 3/8 inches in overall length. From the weapon, as manufactured, a "hand stock" had been removed and the barrel had been shortened, reducing the weapon's overall length from that as manufactured of 26 to 28 inches to the dimensions set forth above.

12. The firing pin and "retaining" pin were missing from the weapon when it was examined and when taken from the

Defendant. In that condition, the weapon could not fire a shell.

13. To allow the weapon to fire, it would be necessary to put a firing pin or its equivalent such as a small nail, into the receiver of the weapon. [The expert witness] did this and fired the weapon. The operation of placing the firing pin in the weapon took about two seconds while the operation to place a firing pin plus a retaining pin, not necessary for the firing mechanism, but necessary to keep the firing pin from falling out if the barrel were raised any significant amount from horizontal, plus an accompanying spring, again not necessary for the mechanical operation of the weapon, was about 30 seconds.

The court concluded that because the shotgun could not be fired without a firing pin and neither a firing pin nor an object that could have been used as a substitute was found in the car or on the defendant's person, the shotgun in the condition possessed by the defendant was not a dangerous weapon. Based on this conclusion, the trial court dismissed the charge of possession of a dangerous weapon. The People appealed from the order of dismissal pursuant to section 16–12–102, 8A C.R.S. (1986).

### II.

Section 18–12–102(3) provides that a person who knowingly possesses a dangerous weapon commits a class 5 felony. The definition of dangerous weapon is supplied by section 18–12–102(1), which provides:

As used in this section, the term "dangerous weapon" means a firearm silencer, machine gun, short shotgun, or short rifle.[1]

Section 18–12–101(1)(i), 8B C.R.S. (1986), in turn defines "short shotgun" as "a shotgun having a barrel or barrels less than eighteen inches long or an overall length of less than twenty-six inches."

The People assert that the district court erred in dismissing the charge of possession of a dangerous weapon. They note that in *Grass v. People*, 172 Colo. 223, 471 P.2d 602 (1970), this court considered the meaning of the term "deadly weapon" and held that "certain weapons are by their very design and make so lethal in nature that a trial court should rule as a matter of law that they are 'deadly weapons.'" 172 Colo. at 228–29, 471 P.2d at 605. The People point out that a shotgun is by its nature designed to kill or seriously injure and that the defendant's shotgun, although temporarily inoperable, was not rendered permanently unusable. In fact, it took a firearms expert only two seconds to replace the firing pin so the gun could be fired. The People argue that the purpose of section 18–12–102 is to prevent people from carrying or otherwise possessing highly dangerous weapons. They assert that upholding the dismissal in this case will frustrate the purpose of the law by allowing a defendant to avoid prosecution by removing a part of the weapon that can be easily replaced.

The defendant asserts that the district court properly dismissed the charge. He points out that section 18–12–102 prohibits the possession of specified weapons and argues that since the item seized from his car did not have the operational ability to fire, it is not one of the proscribed items. The defendant also contends that the shotgun in his possession was not a dangerous weapon because it did not meet the statutory definition of firearm, which is set forth in section 18–1–901(3)(h), 8B C.R.S. (1986), as "any ... shotgun ... or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges."

Our task in construing a statute is to ascertain and give effect to the intent of the legislature. *E.g., People v. Guenther,* 740 P.2d 971, 975 (Colo. 1987). The plain legislative intent underlying section 18–12–102(1) and (3) was to prohibit the knowing possession of certain weapons that present a grave threat to human life and safety or, in the case of a firearm silencer, enable such a weapon to be discharged with limit-

---

**1.** Subsequent to the events upon which the charges against the defendant were brought, section 18–12–102 was amended to include "bal-

listic knife." *See* Ch. 132, sec. 1, § 18–12–102, 1987 Colo. Sess. Laws 674.

ed risk of detection. It would severely undermine the efficacy of this legislation to hold that by removal and concealment of an essential part that can be readily replaced, or by slightly damaging the weapon, a machine gun, short shotgun, or short rifle loses its character as a dangerous weapon. Therefore, we conclude that such a weapon continues to fall within the ambit of the statutory definition of dangerous weapon when with the addition of a readily replaceable part or the accomplishment of a quickly-effected repair it can be made operable.[2]

We find support for our holding in the reasoning of other courts that have considered the issue. In *Commonwealth v. Bartholomew*, 326 Mass. 218, 93 N.E.2d 551 (1950), the defendant was charged with possession of a machine gun, and the issue was whether the weapon in question, which lacked a firing pin, retained the characteristics of a machine gun. The court noted that a weapon may be so defective or damaged that it loses its original character as a firearm, but "this character is not lost when a relatively slight repair, replacement, or adjustment will make it an effective weapon." *Id.* 93 N.E.2d at 552. The court held that "the absence of the easily replaceable firing pin did not destroy the character of the implement in question as a machine gun." *Id.*[3] The court pointed out that whether the gun was a machine gun as defined by statute was a question of fact to be answered by the jury under appropriate instructions. *Accord Commonwealth v. Sperrazza*, 372 Mass. 667, 363 N.E.2d 673, 675 (1977). *See also Ray*

*v. State*, 443 P.2d 120 (Okla.Crim.App.1968) (the question as to the weapon's capability of being fired was for the jury to decide).[4]

In *Di Buono v. Haskins*, 190 Misc. 888, 76 N.Y.S.2d 636 (N.Y. New Rochelle City Ct. 1948), the defendant was charged with possession of a pistol without a license. An authority on firearms testified that the pistol could not be fired and that it would take an expert at least one hour to make the gun operable. The court determined that:

> a weapon is dangerous within the meaning of the statute either when it can be fired or when, with reasonable preparation, it can be made effective and fit for the use for which it was manufactured. What constitutes a reasonable preparation depends, of course, upon the time required, the changes that have to be made in the weapon, the parts which have to be inserted and all the other attendant factors and circumstances.

*Id.* 76 N.Y.S.2d at 637. Applying this standard to the facts of the case before it, the court found that the defendant could not have made the gun effective with reasonable preparation and therefore the weapon found on the defendant was not a dangerous one. *See also People v. Pearson*, 85 Misc.2d 1029, 381 N.Y.S.2d 401, 402 (N.Y. Crim.Ct.1976).

We are persuaded by the reasoning of the courts in *Commonwealth v. Bartholomew* and *Di Buono v. Haskins*, which is fully consistent with the legislative intent apparent from the language of section 18–

---

2. This conclusion is consistent with our reasoning in *Hutton v. People*, 156 Colo. 334, 398 P.2d 973 (1965). The defendant in that case sought to withdraw his plea of guilty to aggravated robbery, arguing that since the gun he used in the robbery was not real, it was not a dangerous weapon. We held that "[a] dangerous weapon is an article of offense which in its *intended or easily adaptable use* is likely to produce death or serious bodily injury." 156 Colo. at 338, 398 P.2d at 975 (emphasis added).

3. The United States Supreme Court has held that an unloaded gun is a dangerous weapon within the meaning of the federal bank robbery statute, 18 U.S.C. § 2113 (1982). *McLaughlin v. United States*, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986).

4. Not all courts that have considered the issue have focused on the amount of preparation it takes to make an inoperable weapon effective. *See, e.g., Commonwealth v. Harris*, 344 S.W.2d 820 (Ky. 1961) (a firearm incapable of being fired because of mechanical defects does not constitute a deadly weapon within the meaning of the statute proscribing carrying a concealed deadly weapon). *Cf. People v. Sanchez*, 98 Mich.App. 562, 296 N.W.2d 312 (1980) (any distinction between an unloaded and an inoperable firearm is meaningless; therefore, since an unloaded handgun has been held to be a pistol within the meaning of a statute proscribing carrying a concealed pistol, an inoperable handgun is also a pistol under that statute).

12-102. When a prosecution under section 18-12-102 involves a weapon that is inoperable for some reason, whether the weapon is a dangerous one is a question of fact. In considering this question, the trier of fact must weigh a variety of factors including "the time required, the changes that. have to be made in the weapon, the parts which have to be inserted and all the other attendant factors and circumstances." *Di Buono*, 76 N.Y.S.2d at 637. The district court erred in ruling as a matter of law that the item seized from the defendant was not a "short shotgun" within the meaning of the statute. The trier of fact should have been given the opportunity to consider the question and reach its own determination. Accordingly, we reverse the order of the district court and remand the case with directions to reinstate the charge of possession of a dangerous weapon.