**Alan CHARNES, as Director of the Department of Revenue; and the Motor Vehicle Division, State of Colorado, Petitioners,**

v.

**Leila (Billy) BOOM, Respondent.**

**No. 87SC171.**

Supreme Court of Colorado,
En Banc.

Dec. 19, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Anthony S. Trumbly, Asst. Atty. Gen., Denver, for petitioners.

Peter L. Mattisson, Westminster, for respondent.

LOHR, Justice.

In *Boom v. Charnes*, 739 P.2d 868 (Colo.App.1987), the Colorado Court of Appeals affirmed a district court judgment reversing the Department of Revenue's decision to revoke petitioner Leila Boom's driver's license for her refusal to submit to a chemical analysis of her blood for the purpose of determining its alcohol content. The court of appeals concluded that the administrative revocation statute, section 42-2-122.1, 17 C.R.S. (1984), requires that a chemical test for alcohol must be requested within one hour of the alleged driving offense in order to provide a basis for revocation of a driver's license. Because the request in this case occurred after the one-hour period, the court of appeals held that the request could not form the basis for a driver's license revocation pursuant to section 42-2-122.1(1)(a)(II), 17 C.R.S. (1984). We granted certiorari to review this conclu-

sion. We now hold that a request for a chemical test more than one hour after the alleged driving offense but within a reasonable time of that offense will support the revocation of a driver's license for refusal to submit to the test. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court with directions to return it to the Department of Revenue for further proceedings.

## I.

At about 4:05 p.m. on January 25, 1985, Officer Les Perry of the Golden Police Department was dispatched to the scene of a one-car accident in Golden, Colorado. Upon arriving at the scene, Perry observed Leila Boom trapped underneath the dashboard of her car, unconscious but awakening. Perry could smell a strong odor of alcoholic beverage in the car and noticed that Boom's head was bleeding profusely. An ambulance arrived shortly and transported Boom to a hospital.

Perry arrived at the hospital at about 6:30 p.m. and asked Boom to submit to a chemical test of her blood. Boom at first refused to cooperate. At approximately 6:45 p.m., however, she agreed to submit to a blood test. When the nurse began to withdraw blood for the test, Boom became combative and the nurse was forced to terminate the test before it was completed. Boom was later transferred to another hospital for psychiatric care.

On February 19, 1984, Boom was issued a summons for driving under the influence of alcohol[1] and careless driving.[2] The Department of Revenue (Department) thereafter notified Boom that her license was revoked because she had refused to submit to chemical testing of her blood. The Department advised her, however, that she had a right to a hearing to determine whether there was a factual basis for revocation. *See* § 42–2–122.1(1)(b), 17 C.R.S. (1984). Boom requested such a hearing. On April 19, 1984, the Department conducted a hearing pursuant to section 42–2–122.1 to determine whether Boom had refused to submit to a chemical analysis of her blood. The hearing officer found by a preponderance of the evidence that Boom had refused to submit to a blood test, and he sustained the revocation of her driver's license.

Boom petitioned the district court for judicial review of the Department's order pursuant to section 42–2–122.1(9), 17 C.R.S. (1984). The district court reversed and remanded for a rehearing because the hearing officer had failed to determine whether Boom had been capable of rationally deciding whether to consent to or refuse a blood test, a fact that the district court determined to be critical to the outcome of the license revocation proceeding.

The Department appealed to the Colorado Court of Appeals. The court of appeals agreed with the Department that only Boom's external manifestations of unwillingness to take the test, not her state of mind, were relevant to a determination of whether she had refused testing. Nevertheless, the court of appeals affirmed the district court judgment on another ground. The court of appeals concluded that Boom's license revocation could not be based on her refusal to submit to a chemical test that had been requested more than an hour after the alleged offense. In so holding, the court construed section 42–2–122.-1(1)(a)(II), 17 C.R.S. (1984), as requiring that a test relied upon for revocation be requested within one hour after the commission of the alleged offense. We accept-

---

1. § 42–4–1202, 17 C.R.S. (1984). This section was amended in several respects effective July 1, 1988. One result of the changes was to reduce the minimum amount of alcohol in a person's blood or breath necessary for a violation of that section from 0.15 grams to 0.10 grams per hundred milliliters of blood or two hundred ten liters of breath. Ch. 293, sec. 4, § 42–4–1202, 1988 Colo.Sess.Laws 1359, 1363. By that same amendment, the legislature provided that the relevant time during which the alcohol content of a driver's blood is to be assessed is at the time of driving or within two hours after driving. *Id.*

2. § 42–4–1204, 17 C.R.S. (1984). This section was amended in 1985 and 1987 to alter the penalty for careless driving. Ch. 317, sec. 60, § 42–4–1204, 1987 Colo.Sess.Laws 1495, 1516; ch. 333, sec. 1, § 42–4–1204, 1985 Colo.Sess. Laws 1325.

ed certiorari to review this construction of section 42–2–122.1(1)(a)(II).

## II.

### A.

Section 42–2–122.1 contains extensive provisions governing administrative revocation of drivers' licenses based on alcohol-related driving offenses and is applicable to all persons who possess Colorado driver's licenses. Under the procedures included in that statute, the General Assembly has directed the Department to revoke the license of any person upon the Department's determination that the person:

(I) Drove a vehicle in this state when the amount of alcohol in such person's blood was 0.15 or more grams of alcohol per hundred milliliters of blood or 0.15 or more grams of alcohol per two hundred ten liters of breath at the time of the commission of the alleged offense or *within one hour thereafter*, as shown by chemical analysis of such person's blood or breath; or

(II) Refused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3).

§ 42–2–122.1(1)(a), 17 C.R.S. (1984) (emphasis added).[3]

■ In construing a statute, our task is to ascertain and give effect to the intent of the legislature. *E.g., People v. Vigil*, 758 P.2d 670, 672 (Colo.1988); *People v. Guenther*, 740 P.2d 971, 975 (Colo.1987). To this end, we must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts. *E.g., Martinez v. Continental Enterprises*, 730 P.2d 308, 315 (Colo. 1986); *Allen v. Charnes*, 674 P.2d 378, 381 (Colo.1984). If a statute is ambiguous, we may determine the intention of the General Assembly by considering the statute's legislative history, the state of the law prior to the legislative enactment, the problem addressed by the legislation, and the statutory remedy created to cure the problem. *See* § 2–4–203, 1B C.R.S. (1980); *Schubert v. People*, 698 P.2d 788, 793–94 (Colo.1985).

Applying these principles, we must reject the statutory construction adopted by the court of appeals under which the one-hour limitation contained in section 42–2–122.-1(1)(a)(I) would also apply to section 42–2–122.1(1)(a)(II). This conclusion finds support in the language employed in section 42–2–122.1(1)(a), the legislative history underlying subsections I and II of section 42–2–122.1(1)(a), and the overall purpose of the statutory provisions enacted to combat alcohol-related driving offenses.

### 1.

■ The court of appeals' construction of section 42–2–122.1(1)(a)(II) does not give adequate weight to the differences in the language used in subsection I and subsection II or to the different legislative origins of the two subsections in reaching the conclusion that the one-hour time period explicitly provided in subsection I is also applicable to subsection II, which prescribes no time period. It is true that a driver who consents to a chemical test is not subject to subsection I administrative revocation unless the test is performed within the specified one-hour period after the commission of the alleged offense. However, in the absence of an explicit temporal limitation in subsection II, it does not necessarily follow that the refusal to submit to a chemical test must occur within that same one-hour period in order to support a revocation. It is therefore necessary to look at the legislative history and the purposes underlying

---

**3.** § 42–2–122.1(1)(a)(I) was amended, effective July 1, 1987, to extend the permissible time within which a test can be taken to form the basis for revocation to two hours after the commission of the alleged offense. Ch. 315, sec. 1, § 42–2–122.1(1)(a)(I), 1987 Colo.Sess.Laws 1491. By that same amendment, the two-hour time span was specifically introduced into § 42–2–122.1(8)(c), which specifies the issue to be resolved at a revocation hearing. Ch. 315, sec. 1, § 42–2–122.1(8)(c), 1987 Colo.Sess.Laws 1491. Effective July 1, 1988, § 42–2–122.1(1) was repealed and reenacted with amendments that reduce the minimum amount of alcohol in a person's blood or breath necessary for revocation from 0.15 to 0.10 grams of alcohol per hundred milliliters of blood or two hundred ten liters of breath. Ch. 293, sec. 2, § 42–2–122.1(1.5)(a), 1988 Colo.Sess.Laws 1359, 1360.

these subsections as guides to ascertain their meaning.

### 2.

The legislative history of section 42–2–122.1 demonstrates that subsections I and II should be regarded as independent for the purpose of determining the time within which the test must be requested. The provision for per se revocation set forth in subsection I was first adopted in 1983 in an effort to provide a speedy and effective deterrent for drinking and driving and was aimed particularly at the heavy or habitual drinker. *See* Hearings on H.B. 1287 before the Senate State Affairs Committee, 54th General Assembly, 1st Session, April 27, 1983. Revocation based on refusal to submit to a chemical test under subsection II is an older concept dating back in Colorado law to 1967. *See* Ch. 356, sec. 2, § 13–5–30(3)(d), 1967 Colo.Sess.Laws 753, 754. Thus, the two subsections have completely different origins. Since the revocation provision of section 42–2–122.1(1)(a)(II) based on refusal to submit to a chemical test preceded the per se revocation provision of section 42–2–122.1(1)(a)(I), there is no reason to believe that the one-hour time limitation in subsection I is in any way relevant to the construction of subsection II.

### 3.

A construction that regards subsections I and II as independent of each other for the purpose of determining the time within which the test must be requested accommodates the overall purposes of the Uniform Motor Vehicle Act, articles 1 to 4 of title 42, 17 C.R.S. (1984 & 1988 Supp.), of which these subsections are a part. In Colorado, drivers are deemed to have expressly consented to submit to a test evaluating the alcohol content of their blood or breath if arrested for driving under the influence of, or while impaired by, alcohol. § 42–4–1202(3), 17 C.R.S. (1984 & 1988 Supp.). However, the General Assembly has granted drivers the right to refuse to submit to a test and thereby avoid the physical compulsion incident to involuntary testing procedures. *DeScala v. Motor Vehicle Div.*, 667 P.2d 1360, 1362 (Colo.1983).

A driver who exercises this right becomes subject to administrative driver's license revocation pursuant to subsection II of section 42–2–122.1(1)(a). § 42–4–1202(3)(d), 17 C.R.S. (1984 & 1988 Supp.). A driver who waives this right and submits to a chemical test and whose blood or breath is determined to have an alcohol content exceeding the prescribed limits also is subject to administrative license revocation, under the per se provision, subsection I of 42–2–122.-1(1)(a).

The administrative revocation scheme, with its single sanction of license revocation, "is designed to protect the public from the danger of injury or death caused by persons who violate fundamental restrictions on the right to operate a motor vehicle." *Bath v. Department of Revenue*, 758 P.2d 1381, 1387 (Colo.1988). This broad goal is effectuated in the two distinct grounds for administrative driver's license revocation found in subsections I and II of section 42–2–122.1(1)(a). These two subsections are separated by a disjunctive and are related only in that they both promote the goal of combatting alcohol-related driving offenses and that a similar procedural process applies to both methods of license revocation.

While the specific statutory objective of subsection I is to effect swift and efficient removal of the public danger presented by drinking drivers without resort to the courts, subsection II has the more immediate purpose of encouraging the driver who is suspected of alcohol impairment to take a chemical test voluntarily. *Augustino v. Department of Revenue*, 193 Colo. 273, 565 P.2d 933 (1977) (construing provision of former implied consent law, § 42–4–1202, 17 C.R.S. (1973), which authorized license revocation for driver's refusal to take blood-alcohol test for intoxication); *Calvert v. Motor Vehicle Div.*, 184 Colo. 214, 519 P.2d 341 (1974) (construing similar provision in now-repealed § 13–5–30(3), C.R.S. (1963 & 1971 Supp.)); *see also DeScala v. Motor Vehicle Division*, 667 P.2d 1360, 1362 (Colo.1983) (obvious statutory goal of former implied consent law, § 42–4–1202(3), 17 C.R.S. (1973 & 1982 Supp.), is to facilitate citizen cooperation in enforcement of highway safety).

Chemical test results serve important functions in settings other than revocation proceedings; they typically provide critical evidence in alcohol and drug-related prosecutions and trials. *See, e.g., Augustino,* 193 Colo. at 276, 565 P.2d at 935 ("The test assists in the prosecution of the drunken driver and the reduction of accidents, injuries and deaths on Colorado's roads."). For example, in a misdemeanor prosecution for driving under the influence or driving while impaired, the amount of alcohol in the defendant's blood or breath at the time of the commission of the alleged offense or within a reasonable time thereafter may give rise to a presumption that the defendant was under the influence of alcohol or that his ability to operate his vehicle was impaired. § 42–4–1202(2), 17 C.R.S. (1984 & 1988 Supp.); *see also Barnes v. People,* 735 P.2d 869 (Colo.1987) (construing term "presumption" in § 42–4–1202(2) to authorize only a permissive inference). A similar presumption may arise in a felony prosecution for vehicular homicide or vehicular assault where the amount of alcohol in the defendant's blood at the time of the commission of the alleged offense or within a reasonable time thereafter exceeds the statutory amount. § 18–3–106(2), 8B C.R.S. (1984 & 1988 Supp.) (vehicular homicide); § 18–3–205(2), 8B C.R.S. (1984 & 1988 Supp.) (vehicular assault).

Moreover, the relevance of the results of a chemical test in a criminal trial, as opposed to a license revocation proceeding, is not limited to tests conducted within one hour after the alleged offense. Instead, such test results may be admissible and provide significant evidence if obtained within a reasonable time after the alleged offense, even if that time exceeds one hour. *See People v. Nhan Dao Van,* 681 P.2d 932 (Colo.1984) (blood tests taken two and three hours after accident utilized as evidence in vehicular homicide case). Also of significance outside of the revocation process is the driver's refusal to submit to a test. *See* § 42–4–1202(3)(e), 17 C.R.S. (1984 & 1988 Supp.) (evidence of refusal is admissible in evidence in criminal proceedings for driving a vehicle under the influence of, or

while impaired by, alcohol); *cf.* §§ 18–3–106(3) and 18–3–205(3), 8B C.R.S. (1984) (in vehicular homicide and vehicular assault statutes, statutory presumptions relating to results of blood-alcohol content test are not to be construed as limiting the introduction, reception, or consideration of any competent evidence bearing upon the question of whether or not the defendant was under the influence of alcohol). Therefore, a construction of section 42–2–122.-1(1)(a)(II) that would encourage a driver to submit to a chemical test of his blood requested more than an hour after the alleged driving offense would best serve the overall legislative goal of combatting the use of the highways by drivers who are impaired by consumption of alcoholic beverages.

### B.

Our holding that the one-hour limitation does not apply to subsection II does not mean that the refusal to submit to a chemical test will result in license revocation regardless of how long an officer delays in requesting the test. Subsection II refers to section 42–4–1202(3), the express consent statute under which a driver is deemed to have consented to a test to determine whether he has violated the laws forbidding driving under the influence of, or while impaired by, alcohol. Because section 42–4–1202(2) of the express consent statute specifically limits the statutory presumption of intoxication or impairment to those cases in which the test was administered within a *reasonable time* of the alleged offense, we hold that a reasonable time limitation also applies to subsection II of section 42–2–122.1(1)(a). Without this limitation, there would be *no means* of ensuring that the driver's refusal to submit to a test prevented the retrieval of otherwise useful or even relevant information.[4]

### III.

For the foregoing reasons, we reverse the judgment of the court of appeals insofar as it construes section 42–2–122.-1(1)(a)(II), 17 C.R.S. (1984), as requiring that a test relied on for revocation of a

---

**4.** In the applicable legislative history, the General Assembly did not address the question of

driver's license must have been requested within one hour of the alleged offense. We remand the case to the court of appeals with directions to return it to the Department of Revenue for a determination of whether Boom's test was requested within a reasonable time after the alleged offense. If it was, the revocation of Boom's driver's license should be sustained. If it was not, the revocation should be reversed.

whether any limit applies to subsection II revocation. However, during the House of Representatives floor debates concerning H.B. 1287, Representative Mielke, a co-sponsor of the bill, made the following comment about what later became § 42–4–1202(3)(e), 17 C.R.S. (1984) (evidence of driver's refusal to submit to test is admissible in a trial for driving under the influence or driving while impaired):

> The bill itself says that the refusal itself shall be admissible. As in any evidence, it is up to the jury—well, first it's up to the court to say whether it's probative or not—whether the refusal was a timely matter or not. If the guy was arrested for five hours and then he refuses the test I do not think it would be probative of whether five hours ago he was driving drunk. That's always been a question of law for the judge. That is the question for the court.

Floor Debates on H.B. 1287 before the House of Representatives, 54th General Assembly, 1st Session, April 6, 1983.

This and other passages from the legislative history indicate that the legislature was aware of the limited value of untimely chemical testing. To ameliorate these concerns, the legislature appears to have envisioned an opportunity for courts to evaluate the relevancy of a refusal to take a chemical test in criminal prosecutions for alcohol-related driving offenses. Absent a time limitation in the administrative revocation statute, § 42–2–122.1(1)(a)(II), a driver's license could be revoked based on a refusal to take a test at a time so remote from the time of the alleged offense as to have little prospect of producing reliable evidence of the driver's blood-alcohol content at the time of that alleged offense. Accordingly, the reasonable time limitation we find applicable today ensures that a driver's refusal will not justify a revocation unless the request for the test is made close enough in time to the alleged offense that the results of such a test would be relevant to a determination of the driver's sobriety at the time of the alleged offense.