STATE OF NEW JERSEY, PLAINTIFF, v. RUSSELL KANIPER, DEFENDANT.

Superior Court of New Jersey
Law Division Morris County

Decided June 26, 1981.

*James C. Fogarty*, Assistant Prosecutor, for the State. (*Peter D. Manahan*, Morris County Prosecutor, Attorney).

*John P. Breen* for defendant.

MacKENZIE, J. S. C.

Can a gun which is mechanically operable but functionally inoperable be considered a lethal weapon? At issue here is a .32 caliber rim-fire Smith & Wesson Model 1½ revolver which was manufactured in 1869. Before the court is defendant's motion to dismiss an indictment charging him, a convicted drug seller,

with unlawful possession of a weapon. *R.* 3:10–2. Defendant contends that his gun is not a weapon within the purview of the New Jersey Code of Criminal Justice (Code).

The statute upon which the indictment is based provides as follows:

> Any person, having been convicted in this State or elsewhere of the crime of aggravated assault, arson, burglary, escape, extortion, homicide, kidnapping, robbery, aggravated sexual assault, or sexual assault whether or not armed with or having in his possession any weapon enumerated in section 2C:39–1r., . . . or any person who has been convicted for the unlawful use, possession or sale of a controlled dangerous substance as defined in article 2 of P.L. 1970, c. 226 (C. 24:21–3 et seq.) who purchases, owns, possesses or controls any of the said weapons is guilty of a crime of the fourth degree. . . [*N.J.S.A.* 2C:39–7]

The facts, as revealed by affidavits, are not in serious dispute. In 1976 defendant was convicted of distribution of a controlled dangerous substance, contrary to *N.J.S.A.* 24:21–19. All parties agree that possession or control of certain weapons by such a person is forbidden by *N.J.S.A.* 2C:39–7. On February 16, 1980 police officers, in the execution of a search warrant, seized the handgun in question at defendant's home.[1] This gun is generally regarded as a curiosity or a collector's piece. When tested, however, the gun was capable of being fired.

This handgun had been passed down through four generations in the Kaniper family. Defendant received the gun in 1970 from his grandmother. From that time until its seizure the gun was kept by defendant in his home among his personal effects. Defendant has never removed it from the house. His possession of the gun was exclusively related to its family and historical significance.

No cartridge ammunition for the gun was seized. This model revolver was designed to chamber cartridges consisting of a 90-grain bullet propelled by 13 grains of black powder. Defend-

---

[1] The whereabouts of the handgun was made known to the police by defendant's estranged wife. Defendant challenged the efficacy of the affidavit which the police submitted to the municipal court judge. His objection is without merit.

ant has never possessed any ammunition for this gun, nor has anyone else in the family so far as can be determined. With one minor exception, ammunition for this gun has not been manufactured during the past 40 years.[2] Cartridges for the gun are not commercially available today. Because the gun is rim-fire and not center-fire, cartridges cannot be made at home. Thus, while the gun is operable in a mechanical sense, the unavailability of ammunition renders it unusable for its intended purpose.

Defendant initially argues for immunity from prosecution, claiming his gun is an antique firearm. Undoubtedly, this Smith & Wesson revolver meets the statutory test of an antique. *N.J.S.A.* 2C:39–1(a). However, defendant's contention that antique handguns were intended by the Legislature to be exempt from the provisions of *N.J.S.A.* 2C:39–7 is without merit. The language of the statute contains no express exemption, nor can one fairly be inferred by the statutory language. Having defined antique firearms only six sections earlier, the Legislature surely would have provided for an exception for antiques if it had so intended. The Legislature did not intend in the Code to provide continuity with the prior law.

A section of the prior gun control law did exempt certain antique firearms from all criminal provisions of the law.[3] *See Service Armament Co. v. Hyland,* 70 *N.J.* 550, 551, 556, 559 (1976). Presumably, even a felon could own an antique gun without violating the former felon-possession statute so long as his possession of the gun was for its ornamental or its historical

---

[2]One lot of .32 caliber rim-fire ammunition was produced in Canada around 1960 but none is known to exist today.

[3]*N.J.S.A.* 2A:151–18 read as follows:

This chapter does not apply to antique firearms which are incapable of being fired or discharged or which do not fire fixed ammunition, or those manufactured before 1898 for which cartridge ammunition is not commercially available, and are possessed as curiosities or ornaments or for their historical significance or value. (Repealed, *L.* 1978, *c.* 95, eff. Sept. 1, 1979).

value. That blanket exemption was not enacted in the weapons control section of the Code. Specific exemptions were legislated to cover only special situations. *N.J.S.A.* 2C:39–6. In addition, an exception for antique firearms can be found in *N.J.S.A.* 2C:39–3(d) which otherwise prohibits the possession of defaced weapons, and see *N.J.S.A.* 2C:39–6(d). On the other hand, an exemption is explicitly denied to antique handguns in the permit to carry section. *N.J.S.A.* 2C:39–5(b).

Consideration must also be given to the fact that *N.J.S.A.* 2C:39–7 itself represents an amendment to the Code.[4] This provision was added as part of the bill which amended various portions of the weapons control section. Had the Legislature wanted to carry forward from the previous law the exemption for antique firearms, the amendment would have provided the perfect opportunity. Omission of such an exemption cannot, in these circumstances, be deemed a legislative oversight. *N.J.S.A.* 2C:39–7 must be construed as evincing a conscious purpose by our legislators to forbid possession by a convicted felon of even antique firearms, as defined in *N.J.S.A.* 2C:39–1(a), so long as they are operable or readily made so.

*N.J.S.A.* 2C:39–7 does not specify which weapons may not be possessed by felons. Rather, reference to the definition section of the code is necessary. The Legislature instructs that

> r. "Weapon" means anything readily capable of a lethal[5] use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable[6] . . . [*N.J.S.A.* 2C:39–1(r)]

---

[4]*L.* 1979, c. 179, § 6, eff. Sept. 1, 1979.

[5]Although the word "lethal" is not defined in the Code, the ordinary definitions of "deadly," "mortal" and "fatal" seem to fit into the legislative context.

[6]The word "operable" is not defined in the Code. Neither can a definition be found in *Black's Law Dictionary* (5 ed. 1979). The standard definition is

Because of the inclusion of "all firearms" in the definition of a "weapon," "firearm" must also be defined:

.  .  .  .  .  .  .  .

> f.  "Firearm" means any hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectible ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing by means of a cartridge or shell. . . .  [N.J.S.A. 2C:39–1(f)]

Defendant's handgun seems to qualify as a firearm because of its operability.  However, the question remains as to whether the gun which is functionally inoperable can be regarded as a lethal weapon.

The State contends that every firearm which is mechanically capable of being discharged is encompassed by the felon possession statute.  In the State's view, every such gun is a firearm. Defendant's position is that his gun is functionally inoperable. He argues that no one can fire this without having the proper ammunition and no one has it.  This gun, he contends, is incapable of inflicting lethal or serious bodily injury and, therefore, cannot be considered a weapon.

Some consideration of the history of gun control is necessary to resolve this conflict.  Before enactment of the Code, possession of "any firearms or any of the said dangerous instruments" by a convicted felon was forbidden.  N.J.S.A. 2A:151–8.[7]  Sub-

---

"fit, possible, or desirable to use."  See *Webster's New Collegiate Dictionary* (1979 ed.), 797.

[7]N.J.S.A. 2A:151–8 read in pertinent part:

> Any person, having been convicted in this State or elsewhere of any crime enumerated in section 2A:151–5, whether or not armed with or having in his possession any firearm or dangerous instrument enumerated in section 2A:151–5, . . . or any person who has been convicted for the unlawful use, possession or sale of a controlled dangerous substance as defined in article 2 of P.L. 1970, c. 226 (C. 24:21–3 et seq.) who purchases, owns, possesses or controls any firearm of any of the said dangerous instruments, is guilty of a misdemeanor . . . . [repealed by L. 1978, c. 95, eff. Sept. 1, 1979].

ject to the blanket exemption for antiques and curiosities, the legislative intent was to prohibit certain convicted persons from possession of these weapons which were enumerated in *N.J.S.A.* 2A:151–5. *See State v. Middleton,* 143 *N.J.Super.* 18, 22 (App. Div.1976), aff'd o. b. 75 *N.J.* 47 (1977). Included among the forbidden weapons were "any firearms, whether or not capable of being discharged," or "any object or device, whether toy or imitation, having an appearance similar to or capable of being mistaken for any of the foregoing." *N.J.S.A.* 2A:151–5.[8] Thus, the former gun control law prohibited the possession by a felon of either a genuine firearm, whether operable or not (antiques or curiosities excepted), or any replica or toy firearm.

*N.J.S.A.* 2C:39–7 does not contain the expansive language of *N.J.S.A.* 2A:151–8. The Code only bars possession by a felon of an operable firearm, or one readily made operable. This provision clearly represents an inconsistency with and therefore a break from the prior law. See *N.J.S.A.* 2C:1–1(e). Possession of an inoperable firearm, an imitation, or a toy would not be punishable under this section of the Code. Unless the firearm as defined in *N.J.S.A.* 2C:39–1(f) is operable, or easily can be made operable, it cannot be considered to be included within the concept of "all firearms" as used in *N.J.S.A.* 2C:39–1(r). The firearm expert for defendant asserts that ammunition which is capable of being fired from this gun does not exist. The State cannot disavow this assertion.

While the defendant's gun could discharge a properly equipped bullet, no such ammunition can be found. Lacking the capability of being fired, defendant's gun does not possess the necessary capacity to kill or seriously injure. It is simply not possible for anyone to operate the gun in the intended manner

---

[8]*N.J.S.A.* 2A:151–5 was repealed by the Code and replaced by *N.J.S.A.* 2C:15–1(b).

by firing a bullet at another person. Since neither defendant nor any other person is capable of discharging a bullet from the gun, I conclude that defendant's gun cannot be regarded as operable as that term is used in the Code. It does not and cannot perform the function of a gun. Thus, this model can neither be a "firearm" nor a "weapon" as these terms are defined in *N.J.S.A.* 2C:39–1(r) and prohibited by *N.J.S.A.* 2C:39–7.

After this motion was argued but before it was decided, an Appellate Division opinion bearing somewhat on the issue here was approved for publication, *State v. Butler*, 178 *N.J.Super.* 205 (App.Div.1980), certif. granted, 87 *N.J.* 395 (1981). In *Butler*, the use of an empty hand in the pocket to simulate a handgun was held to enhance the act of robbery under *N.J.S.A.* 2C:15–1(b) to a crime of the first degree. Such a robbery occurs when "in the course of committing the theft the actor . . . threatens the use of a deadly weapon." The obvious distinction between *Butler* and this case is that the robbery statute focuses on the subjective perception of the victim while the felon-possession statute deals with the objective utility of the weapon. Since the victim in *Butler* reasonably perceived that "the immediate use of a handgun was both threatened and apprehended during the course of the robbery", the elements of the first-degree robbery were established. *Id.* at 209. In contrast, operability judged by an objective standard is the criterion constructed by the Legislature for the felon-possession statute. Had defendant threatened someone with this gun during the course of a theft he, too, could be said to have committed a crime of the first degree.

Access to weapons for felons is precisely what the legislature seeks to deny in *N.J.S.A.* 2C:39–7. That purpose will not be frustrated by this decision. Having decided that this handgun is not a weapon, logic dictates that its possession by defendant is not prohibited by *N.J.S.A.* 2C:39–7. The indictment must be dismissed.